**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

KENNARD CARTER,
            *Defendant-Appellant.*

No. 03-10377

D.C. No.
CR-03-0019-CRB

OPINION

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted
October 7, 2004—San Francisco, California

Filed August 25, 2005

Before: Cynthia Holcomb Hall, Melvin Brunetti, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Brunetti

**COUNSEL**

David W. Fermino, Assistant Federal Public Defender, San Francisco, California, for the appellant.

Philip J. Kearney, Assistant United States Attorney, San Francisco, California, for the appellee.

**OPINION**

BRUNETTI, Circuit Judge:

Kennard Carter appeals the imposition of a sentence enhancement pursuant to United States Sentencing Guideline § 2K2.1(b)(4), which mandates a two-point offense-level enhancement for certain firearms offenses when any firearm involved has an altered or obliterated serial number. This case requires us, as a matter of first impression, to construe the meaning of the phrase "altered or obliterated" as used in Guideline § 2K2.1(b)(4).

We hold that, for the purposes of Guideline § 2K2.1(b)(4), a firearm's serial number is "altered or obliterated" when it is materially changed in a way that makes accurate information less accessible. We further hold that, under that standard, a serial number which is not discernable to the unaided eye, but which remains detectable via microscopy, is altered or obliterated. Here, Carter concedes that the serial number on the firearm he possessed is "not decipherable by the naked eye." Accordingly, we affirm the district court's imposition of the sentence enhancement.

**BACKGROUND**

On November 2, 2002, in response to a report of a person with a gun, San Francisco police officers were dispatched to

an area near the intersection of Sixth and Market Streets, where they observed a man, later identified as Carter, throw a black metal object into a city trash can. Officers took Carter into custody without incident and recovered the discarded object, which they preliminarily identified as a loaded .25 caliber Beretta handgun with a defaced serial number. In place of the serial number was "a bright silver patina" that, according to the district court, rendered the serial number "unobservable to the naked eye." Forensic examination of the weapon confirmed that the firearm was, indeed, a .25 caliber Beretta semiautomatic pistol. The laboratory report, dated November 26, 2002, indicated that the serial number, though "partially defaced," was "discernible with the use of microscopy," and revealed it to be BU12070V.

Carter pleaded guilty to a one-count indictment charging him with being a felon in possession of a firearm. 18 U.S.C. § 922(g)(1). Prior to his sentencing hearing, Carter filed a memorandum arguing that the two-level enhancement prescribed by § 2K2.1(b)(4) should not apply because the serial number's defacement did not render the weapon untraceable. In that memorandum, as well as on appeal to this court, Carter concedes that the gun's serial number is "not decipherable by the naked eye."

The district court rejected Carter's argument, reasoning that if the words "altered or obliterated" were construed to require that the weapon be rendered untraceable, the plain meaning of the statute would be changed. Specifically, the district court commented: "So, in a sense, you've changed it. It's not that it was altered, it was whether it's traceable or not." The district court further noted that the enhancement serves to "discourage the transfers of weapons where the weapons . . . have an appearance that they are not traceable" because such weapons "have a greater street value . . . or a greater flexibility to be utilized in [il]licit activities." The district court thus imposed the two-level enhancement under § 2K2.1(b)(4), and

sentenced Carter to 46 months' imprisonment and three years' supervised release. This appeal followed.

## STANDARD OF REVIEW

We review *de novo* the district court's interpretation and application of the United States Sentencing Guidelines. *United States v. Garcia*, 323 F.3d 1161, 1164 (9th Cir. 2003).

## DISCUSSION

**[1]** Although the Ninth Circuit previously has remarked on the purpose of § 2K2.1(b)(4), neither we, nor any other federal court, has passed on the meaning of "altered or obliterated" as used in that section. With no controlling precedent and scant case law to guide our inquiry, we begin, as we must, with the plain language of § 2K2.1(b)(4) itself. Though we find the language of the guideline unmistakably clear, we go on to examine the structural context and legislative history of § 2K2.1(b)(4), and then consider judicial interpretations of the purpose of that section. In the end, we affirm because the ordinary meaning of the phrase "altered or obliterated" cannot support the contention that a serial number must be rendered scientifically untraceable for § 2K2.1(b)(4) to apply, and because interpreting that phrase in accord with its ordinary meaning remains faithful to the enhancement's purpose.

### A. Plain Language

It is well settled that, in a statutory construction case, analysis must begin with the language of the statute itself; when the statute is clear, "judicial inquiry into [its] meaning, in all but the most extraordinary circumstance, is finished." *Estate of Cowart v. Niklos Drilling Co.*, 505 U.S. 469, 475 (1992). Another "fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). Accordingly, our anal-

ysis begins with the ordinary meanings of "altered" and "obliterated" at the time that § 2K2.1(b)(4) was adopted.

**[2]** Guideline § 2K2.1(b)(4) reads, both now and at the time of Carter's offense, as follows: "If any firearm was stolen, or had an altered or obliterated serial number, increase [base offense level] by 2 levels." United States Sentencing Commission, *Guidelines Manual*, § 2K2.1(b)(4) (Nov. 2002). The Guidelines were promulgated by the U.S. Sentencing Commission in 1987, at which time the precursor to § 2K2.1(b)(4), then designated § 2K2.1(b)(1), read: "If the firearm was stolen or had an altered or obliterated serial number, increase [base offense level] by 1 level." U.S.S.G. § 2K2.1(b)(1) (Nov. 1987). Neither "altered" nor "obliterated" has at any time been defined within the Guidelines; thus, we follow the common practice of consulting dictionary definitions to clarify their ordinary meanings. *See, e.g.*, *MCI Telecomm. Corp. v. AT&T Co.*, 512 U.S. 218, 225 (1994). We note preliminarily, however, that the phrase "altered or obliterated" is presented in the disjunctive in § 2K2.1(b)(4). Thus, even if we were to construe "obliterated" as narrowly as Carter urges—which we do not—the sentence enhancement properly applies so long as the serial number is merely "altered."

Carter urges a narrow construction of "obliterated" such as "total destruction" or "wiping away completely so as to leave no trace," and suggests that a serial number is not obliterated if it remains traceable via microscopy. Relying heavily on a definition of "alteration" that is most relevant to written instruments, he then argues that a serial number is not "altered" unless "its meaning is changed or it is made different in a material way," suggesting that "unless the serial number has been changed into a different number, [it] has not been altered." From that premise, Carter submits that, even if the serial number is defaced, so long as it is not changed into a different number the defacement is not an "alteration" but an "attempted obliteration"—an act not punishable by the enhancement. Because such linguistic gymnastics would

require us to interpret "altered" in a manner contrary to its ordinary meaning, we are not persuaded.

### 1. Ordinary meaning of "obliterated"

Although several dictionary definitions do, in fact, support Carter's view that "obliterated" might be read to mean "untraceable," alternative definitions in the same dictionaries suggest that it means something less than scientific untraceability. For example, "obliterate" is defined by Black's Law Dictionary as "[t]o remove from existence; to destroy all traces of," Black's Law Dictionary 1106 (8th ed. 2004); by Webster's Dictionary as to "destroy utterly all traces, indications, significance of," Webster's Third New International Dictionary 1557 (1981); and by the American Heritage Dictionary as "[t]o do away with completely so as to leave no trace," American Heritage Dictionary of the English Language 1248 (3d ed. 1992).

Such definitions reasonably could embrace a requirement that a serial number be obliterated not just beyond the unaided eye, but also beyond scientific recognition. This is not, however, the only possible interpretation, as alternative definitions define "obliterate" more flexibly. For example, obliterate is also defined by both Black's and American Heritage as "[t]o wipe out, rub off, or erase," Black's, *supra*, at 1106; American Heritage, *supra*, at 1248; and by Webster's as "to make undecipherable or imperceptible by . . . wearing or chipping away," Webster's, *supra*, at 1557. Examining dictionaries for the ordinary meaning of "obliterated" is thus inconclusive, and our analysis of § 2K2.1(b)(4)'s plain language turns instead on our construction of "altered."

### 2. Ordinary meaning of "altered"

[3] Irrespective of how "obliterated" is construed, "altered" surely requires a lesser degree of defacement. Black's does not define "altered" or "alter," though it provides two defini-

tions of "alteration" that are not relevant here.[1] Webster's defines "alter" as "to cause to become different in some particular characteristic (as measure, dimension, course, arrangement, or inclination) without changing into something else." Webster's, *supra*, at 63. American Heritage similarly defines alter as "[t]o change or make different; modify." American Heritage, *supra*, at 55. We find these definitions to comport with the ordinary meaning of the word "altered."

Carter's argument that "unless the serial number has been changed into a different number, [it] has not been altered" must fail, then, because it is at odds with this ordinary meaning. Seizing on a definition of "alteration" relevant only to written instruments—an "act done to an instrument, after its execution, whereby its meaning or language is changed," Black's, *supra* at 85—Carter urges that to be "altered," a firearm's serial number must be more than merely "changed" or "modified"; it must have a changed *meaning*. In other words, Carter would have us view a scratched out "3" as unaltered, but a "3" that has been changed into an "8" as altered. The plain meaning of the word "altered" cannot accommodate this additional requirement.

**[4]** Thus, we think that the American Heritage and Webster's definitions of "alter," which require some degree of change or modification, but not a changed meaning, better capture its ordinary meaning. Here, the district court found that the serial number on Carter's weapon had been rendered "unobservable to the naked eye." On appeal, Carter concedes this factual issue. His legal argument that such severe defacement does not make the serial number somehow altered—that is, "changed," "different," or "modified"—runs counter to this ordinary meaning, and is therefore unpersuasive.

---

[1]The first, a "substantial change to real estate," applies explicitly to property law; the second, an "act done to an instrument, after its execution, whereby its meaning or language is changed," is irrelevant in cases that do not involve documents. Black's, *supra*, at 85.

*B.   Structural Context and Legislative History*

**[5]** Although we find the plain language of the Guideline unambiguous, we look to the structural context and legislative history of § 2K2.1(b)(4) for clues that another meaning of the phrase "altered or obliterated"—other than its ordinary meaning—was intended. We find no evidence suggesting that to be the case.

The Sentencing Guidelines were promulgated by the U.S. Sentencing Commission in 1987. Commentary accompanying the 1987 version of § 2K2.1 points to "Statutory Provisions" 18 U.S.C. § 922(a)(6), (g), and (h), which criminalize various firearms offenses. U.S.S.G. § 2K2.1, comment. (statutory provisions) (Nov. 1987). In 1989, these statutory references were amended to include, *inter alia*, 18 U.S.C. § 922(k). U.S.S.G. § 2K2.1, comment. (statutory provisions) (Nov. 1989). Section 922(k) criminalizes the knowing possession of "any firearm which has had the . . . serial number removed, obliterated, or altered." 18 U.S.C. § 922(k) (2004). Although the original version of the Guidelines contains the phrase "altered or obliterated" without reference to § 922(k), that it was shortly amended to reference a code section criminalizing the same conduct suggests that the "altered or obliterated" language in § 2K2.1(b)(4) perhaps is derived from the "removed, obliterated, or altered" language in § 922(k). Lacking a fuller legislative history of § 2K2.1(b)(4) itself, we thus examine the evolution of § 922(k) for hints to the source of these words.

The lineage of § 922(k) dates back to the Federal Firearms Act of 1938, which made it unlawful to "knowingly receive . . . any firearm from which the . . . serial number has been removed, obliterated, or altered." Pub. L. No. 75-785, 52 Stat. 1250. That act did not define the words "removed, obliterated, or altered," *see id.* § 1, and legislative history is unavailable for that period.

The Omnibus Crime Control and Safe Streets Act of 1968 moved this provision, in substance, from Title 15 to Title 18

of the United States Code. Pub. L. No. 90-351, 82 Stat. 197 (providing for codification at 18 U.S.C. § 922(i)). Like its precursor, it did not define the words "removed, obliterated, or altered." *See id.* § 902. Legislative history indicates that the principal purpose of Title IV of the omnibus bill, under which § 922(i) fell, was "to aid in making it possible to keep firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency, and to assist law enforcement authorities in the States and their subdivisions in combating the increasing prevalence of crime in the United States." S. Rep. No. 90-1097 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2113-14. The same report also expresses concern about the in-state use of firearms obtained in other states, and cites statistics tracking the movement of firearms among neighboring states. *Id.* at 2164-65.

Within months, the Gun Control Act of 1968 expanded the provisions of the omnibus bill, which covered only handguns, to additionally include rifles and shotguns. H. Rep. No. 90-1577 (1968), *reprinted in* 1968 U.S.C.C.A.N. 4410, 4413. It did not define the words "removed, obliterated, or altered," and—as relevant for our purposes—simply redesignated subsection (i) as subsection (k), where it remains today. Pub. L. 90-618, 82 Stat. 1213 (1968) (codified as amended at 18 U.S.C. § 922(k) (2004)).

Thus, the legislative history of Guideline § 2K2.1 suggests that the words "altered or obliterated" likely are derived from what is today 18 U.S.C. § 922(k), but no statutory progenitor of § 922(k) at any point defines these words. Legislative history, then, is helpful only in casting light on the general purpose for the statutory provisions cited in the commentary to § 2K2.1; it does not specify why § 2K2.1(b)(4) was enacted or why the phrase "altered or obliterated" was chosen.

*C. Judicial Interpretations of Purpose*

**[6]** Though we have not before had occasion to construe the phrase "altered or obliterated" as used in § 2K2.1(b)(4), the

Ninth Circuit has previously commented on, but not fully analyzed, the purpose of that section. In *United States v. Seesing*, 234 F.3d 456, 460 (9th Cir. 2001), we observed that § 2K2.1(b)(4) intends to "discourag[e] the use of untraceable weaponry." As we shall explain, applying the enhancement to Carter on the facts presented here remains wholly consistent with this purpose.

### 1.  *United States v. Seesing*

The defendant in *Seesing* pleaded guilty to possession of an unregistered firearm and possession of a homemade silencer not identified by serial number. *Id.*; 26 U.S.C. §§ 5841, 5861(d), (i). At sentencing, the district court imposed a two-level enhancement under § 2K2.1(b)(4) because the silencer lacked a serial number. On appeal, we reversed, holding that because the homemade silencer never had a serial number in the first place, it plainly could not have been altered or obliterated. *Seesing*, 234 F.3d at 460. We observed that "while we understand the district court's desire to respect the underlying purpose of Guidelines § 2K2.1(b)(4), discouraging the use of untraceable weaponry, and agree that this purpose is frustrated by the use of homemade silencers without serial numbers, the plain language of the Guideline is clear." *Id.*

**[7]** Emphasizing our use in *Seesing* of the word "untraceable" to describe the purpose of § 2K2.1(b)(4), Carter argues that, to preserve legislative intent, the enhancement should not apply when a firearm's serial number remains traceable, if only via microscopy. This argument, however, misapprehends our comments in *Seesing* about § 2K2.1(b)(4)'s purpose. We did not say in *Seesing* that § 2K2.1(b)(4) intends to punish only those who possess weapons that are "untraceable" by any means; we said, more broadly, that it intends to "discourag[e] the use of untraceable weaponry." *Id.* This purpose is advanced not only by punishing those who possess untraceable firearms, but also by punishing those who possess fire-

arms that are more difficult, though not impossible, to trace because their serial numbers have been defaced.

As this case aptly demonstrates, it may be difficult to determine, from a visual inspection alone, whether a serial number that appears defaced is, in fact, untraceable when scientific means are employed. On the street, where these guns often trade and where microscopy is rarely available, one cannot readily distinguish between a serial number that merely *looks* untraceable and one that actually *is*. At that level, it is appearances that count: A gun possessor is likely to be able to determine only whether or not his firearm *appears* more difficult, or impossible, to trace.[2]

By prescribing enhanced sentences for possessors of firearms with "altered or obliterated" serial numbers, § 2K2.1(b)(4) encourages those who deal in firearms to inspect such weapons and to refuse to handle those with defaced serial numbers. Yet if, as here, a defendant cannot visually distinguish—at the moment he contemplates taking possession—a would-be untraceable firearm from one that is in fact untraceable, it makes little sense for him to be punished in the latter circumstance but to escape punishment in the former. Such an outcome might well encourage, not discourage, the use of untraceable weaponry, for it would signal that although a firearm's serial number has been materially damaged—and thus will visit upon the government the myriad costs of extraordinary tracing measures—its possession

---

[2]We are mindful, of course, that § 2K2.1(b)(4) "applies whether or not the defendant knew or had reason to believe that the firearm . . . had an altered or obliterated serial number." U.S.S.G. § 2K2.1, comment. (n.19) (Nov. 2002). That fact does not affect our analysis here. We may presume that a defendant has knowledge of the enhancement, and that such knowledge provides him an incentive to adjust his behavior accordingly; we need not speculate as to the Sentencing Commission's possible reasons for instructing that the enhancement applies without regard to the defendant's mental state.

occasions no additional punishment, so long as the firearm ultimately remains traceable.

**[8]** Because such an interpretation is at odds with § 2K2.1(b)(4)'s purpose to discourage the use of untraceable weaponry, we decline to adopt it. Rather, as we view it, this enhancement, by punishing possession of weapons that *appear* more difficult to trace, necessarily deters traffic in weapons that are *impossible* to trace. We conclude, therefore, as we did in *Seesing*, that the plain language of § 2K2.1(b)(4) controls. We note, in addition, that our interpretation of this plain language remains consistent with § 2K2.1(b)(4)'s purpose as we previously described it in *Seesing*.

### 2. *United States v. Adams*

**[9]** Our conclusion is buttressed by the First Circuit's recent construction of the word "altered" in *United States v. Adams*, 305 F.3d 30 (1st Cir. 2002), a case with similar facts, but which interpreted 18 U.S.C. § 922(k) rather than Guideline § 2K2.1(b)(4). The defendant in *Adams*, a convicted felon who admitted attempting to scratch out the serial number on a pistol he owned, was convicted of being a felon in possession of a firearm and of possessing a firearm with an "altered" serial number. *Id.* at 33; 18 U.S.C. § 922(g), (k). At trial, the district court charged the jury that "to alter" was "to make some change in the appearance of the serial number." *Adams*, 305 F.3d at 30. On appeal, the defendant argued that this instruction was in error, and contended that a "material alteration . . . rendering the weapon difficult or impossible to trace" was necessary to justify a conviction. *Id.* at 34.

The *Adams* court, reading "altered" in its statutory context beside the words "removed" and "obliterated," first noted that § 922(k) "aims to punish one who possesses a firearm whose principal means of tracing origin and transfers in ownership—its serial number—has been deleted or made appreciably more difficult to make out." *Id.* It further observed that "nothing in

[the] language or purpose suggests that the alteration must make tracing impossible or extraordinarily difficult." *Id.* Because "alter" is not an "obscure or special-purpose term," the *Adams* court concluded that it was enough to charge the jury in the words of the statute, allowing common sense to be their guide, holding that "any change that makes the serial number appreciably more difficult to discern should be enough." *Id.* Since the serial number on the defendant's pistol had been abraded such that four of the six digits were "significantly more difficult to read," it upheld the defendant's conviction, noting that "[o]nly by reading the term 'alter' to mean 'obliterate' or 'make impossible to interpret' could we find the evidence insufficient." *Id.* at 35.

**[10]** Thus the First Circuit in *Adams* found that § 922(k)'s purpose—to punish possessors of firearms whose serial numbers have been "deleted or made appreciably more difficult to make out"—comported with the ordinary meaning of the words used in that statute. *Id.* at 34. Finding ourselves confronted by a related provision and analogous factual circumstances, we find the reasoning of the *Adams* court persuasive and adopt it here. Like the *Adams* court found in the context of § 922(k), we find that nothing in the language or purpose of Guideline § 2K2.1(b)(4) suggests that the defacement must make tracing impossible or extraordinarily difficult for the enhancement to apply. *See id.*

## CONCLUSION

In sum, the ordinary meaning of the phrase "altered or obliterated" cannot support the contention that a firearm's serial number must be rendered scientifically untraceable for Guideline § 2K2.1(b)(4) to apply. To the contrary, nothing in the language, structural context, legislative history, or purpose of § 2K2.1(b)(4) suggests that any defacement must make tracing impossible or extraordinarily difficult. We hold, therefore, that for the purposes of Guideline § 2K2.1(b)(4), a firearm's serial number is "altered or obliterated" when it is

materially changed in a way that makes accurate information less accessible. We further hold that, under that standard, a serial number which is not discernable to the unaided eye, but which remains detectable via microscopy, is altered or obliterated.

The district court sentenced Carter under a mandatory Guidelines scheme which, after *United States v. Booker*, 125 S. Ct. 738 (2005), we now know to be advisory. Nevertheless, in exercising their broader sentencing discretion post-*Booker*, it is clear that district courts must consult the Guidelines—including, where appropriate, § 2K2.1(b)(4)—in fashioning a proper sentence. *Id.* at 757, 764-65. In this case, however, remand for resentencing is not necessary.

Carter's Sixth Amendment rights were not violated because he conceded, both in the district court and on appeal, the factual issue that his firearm's serial number is "not decipherable by the naked eye." This concession negates the need for a plea admission or jury determination of this fact; the remaining issue—whether an indecipherable serial number is "altered or obliterated" for the purposes of § 2K2.1(b)(4)—is a purely legal one. *See United States v. Beaudion*, No. 04-30197, 2005 WL 1668807, at *3 (9th Cir. July 19, 2005) (noting that no Sixth Amendment issue is raised where a defendant merely denies that a set of facts amounts, as a question of law, to the "brandishing" of a firearm); *see also United States v. Von Brown*, No. 04-30219, 2005 WL 1863280, *2 (9th Cir. Aug. 8, 2005) (holding that the categorization of a prior conviction as a "violent felony" or a "crime of violence" is a legal question outside the purview of *Booker* and need not be presented to a jury).

Moreover, pursuant to *United States v. Ameline*, 409 F.3d 1073, 1084 & n.8 (9th Cir. 2005) (en banc), we ordered Carter to indicate whether he wished to pursue resentencing on the theory that nonconstitutional error affected his sentencing pro-

ceeding.**³** *See also United States v. Moreno-Hernandez*, No. 03-30387, 2005 WL 1964483, at \*8 (9th Cir. Aug. 17, 2005). Carter responded, through counsel, that he does not.

**[11]** Therefore, remand for resentencing is unnecessary, and we affirm the district court's imposition of the sentence enhancement.

**AFFIRMED.**

---

**³**We recognize, of course, that *Ameline* indicates that "either the defendant or the government may raise the [issue of] nonconstitutional error." *Ameline*, 409 F.3d at 1084. Here, the government has neither raised this issue nor indicated that it wishes to seek resentencing on this ground.