**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

RAMON ROMERO-MARTINEZ,
          *Defendant-Appellant.*

No. 05-10153

D.C. No.
CR-04-20100-RMW

OPINION

Appeal from the United States District Court
for the Northern District of California
Ronald M. Whyte, District Judge, Presiding

Argued and Submitted
February 16, 2006—San Francisco, California

Filed April 25, 2006

Before: J. Clifford Wallace, Michael Daly Hawkins, and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Wallace

## COUNSEL

Amanda K. Ruiz, Federal Public Defenders, San Jose, California, for defendant-appellant Ramon Romero-Martinez.

Merry Jean Chan, Assistant United States Attorney, Oakland, California, for the plaintiff-appellee.

## OPINION

WALLACE, Senior Circuit Judge:

Romero-Martinez appeals from his sentence of fifty-four months imprisonment and three years supervised release. He challenges the imposition of a two-level sentencing enhancement under section 2K2.1(b)(4) of the United States Sentencing Guidelines (Guidelines) for possessing a firearm which "had an altered or obliterated serial number . . . ." We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and we affirm.

## I.

The facts of this case are relatively simple. On May 8, 2004, Salinas Police Department officers responded to a reported "brandishing of a weapon" at a restaurant and bar. One of the officers saw Romero-Martinez in the men's restroom and ordered him to stop moving and place his hands in the air. Romero-Martinez did not comply and instead walked into one of the stalls. He retrieved a black pistol from his waistband and discarded it. Romero-Martinez then exited the restroom and surrendered to the officers.

The officers found a loaded 9mm model 19 Glock semi-automatic pistol near the restroom wastebasket. Ordinarily, such weapons have three serial numbers: one engraved on the slide, one on the barrel, and a final number cast as a metal plate affixed to the frame of the weapon. This particular pistol was missing the serial number on the frame entirely and the serial numbers on the slide and barrel had been ground off.

Because of the timing of the proceedings, the procedural posture is somewhat unusual. Romero-Martinez was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) on June 16, 2004 and pled guilty on August 3. Shortly after the indictment was handed down, the Supreme Court released its decision in *Blakely v. Washington*, 542 U.S. 296, 313 (2004) ("every defendant has the *right* to insist that the prosecutor prove to a jury all facts legally essential to the punishment"). Romero-Martinez refused to admit that the serial numbers on the gun had been "altered or obliterated," which would support a two-level enhancement under section 2K2.1(b)(4) of the Guidelines. As a result, the district court held a jury sentencing trial to determine whether Romero-Martinez's gun possessed a serial number that had been "altered or obliterated."

At the sentencing trial, the judge instructed the jury that " '[a]ltered' means to have changed or made different. 'Oblit-

erated' means to have removed completely or erased." Romero-Martinez objected to this instruction and instead proposed an instruction based on the American Heritage Dictionary that defined " 'obliterated' as 'To do away with completely so as to leave no trace. To wipe out, rub off, or erase (writing or other markings).' " On appeal, Romero-Martinez challenges the inclusion of "removed" within the definition of "obliterated."

Romero-Martinez also sought an instruction that the jury could not consider the slide and barrel as part of the "firearm" in determining whether the gun had an altered or obliterated serial number. The district court disagreed and stated, "I think the firearm as a whole is the three items when they're put together, so I'm satisfied [with] the instruction . . . ."

The jury found, beyond a reasonable doubt, that the gun possessed an "altered or obliterated" serial number. The jury did not specifically indicate which serial number it believed was altered or obliterated.

Romero-Martinez moved for a judgment of acquittal on the grounds that the serial number on the frame did not qualify because it was attached by means of a metal plate, which allegedly did not comply with federal law, and that the slide and barrel were not part of the "firearm" under federal law. The district court denied the motion.

Before the district court sentenced Romero-Martinez, the Supreme Court filed its decision in *United States v. Booker*, 543 U.S. 220 (2005). In its remedial holding, the Court severed the mandatory aspect of the Guidelines and rendered the Guidelines "effectively advisory." *Id.* at 245. Under this system, the jury trial was not necessary and Romero-Martinez thus received the benefit of a higher government burden of proof on the factual issues.

At sentencing, the district court recognized that the Guidelines were advisory but stated it would "look very hard at the

Guidelines because there is the congressional goal of uniformity in sentencing, among others." The district court then applied the two-level enhancement under section 2K2.1(b)(4). The resulting Guidelines calculation generated a sentencing range of 51-63 months. The district court sentenced Romero-Martinez at the low end of the range to 54 months imprisonment, to be followed by three years of supervised release.

## II.

Much of this appeal is controlled by our recent decision in *United States v. Carter*, 421 F.3d 909 (9th Cir. 2005). There we held that "for the purposes of Guideline § 2K2.1(b)(4), a firearm's serial number is 'altered or obliterated' when it is materially changed in a way that makes accurate information less accessible." *Id.* at 910. We further stated that the purpose of the enhancement is "to 'discourage the use of untraceable weaponry.' " *Id.* at 914, *quoting United States v. Seesing*, 234 F.3d 456, 460 (9th Cir. 2001). "This purpose is advanced not only by punishing those who possess untraceable firearms, but also by punishing those who possess firearms that are more difficult, though not impossible, to trace . . . ." *Id.*

In *Carter*, we based our definition in part on the First Circuit's decision in *United States v. Adams*, which held that "anyone can see what Congress was getting at in the statute. . . . [T]he statute aims to punish one who possesses a firearm whose principal means of tracing origin and transfers in ownership—its serial number—has been deleted or made appreciably more difficult to make out." 305 F.3d 30, 34 (1st Cir. 2002).

**[1]** Thus, the focus of the enhancement is whether the action in question makes "accurate information less accessible" and whether it makes the firearm more difficult to trace. *Carter*, 421 F.3d at 910. With this background, we turn to Romero-Martinez's individual arguments. Because we do not know which serial number the jury relied upon in reaching its

verdict, we consider all of Romero-Martinez's arguments to determine if reliance on any of the three serial numbers would have been legally erroneous.

### III.

Romero-Martinez first contends that the district court erred by giving jury instructions that included "removed" within the definition of obliterated. We review de novo the district court's interpretation and application of the Guidelines. *Carter*, 421 F.3d at 911. We similarly review de novo whether a district court's instructions misstate the required elements. *See United States v. Phillips*, 367 F.3d 846, 854 (9th Cir. 2004).

**[2]** In *Carter*, we held that "a firearm's serial number is 'altered or obliterated' when it is materially changed in a way that makes accurate information less accessible." 421 F.3d at 910. The district court's instruction that " '[o]bliterated' means to have removed completely or erased" easily falls within the definition established by *Carter*. Moreover, "removed" falls comfortably within dictionary definitions of "obliterated."

**[3]** Black's Law Dictionary defines "obliterate" as "to *remove* from existence; to destroy all traces of." Black's Law Dictionary 1106 (8th ed. 2004) (emphasis added). Webster's Third New International Dictionary includes a number of definitions for obliterate, several of which contain "remove." *See* Webster's Third New International Dictionary 1557 (1981) (defining "obliterate" as "1: to *remove* from significance and bring to nothingness: . . . b: to *remove* utterly from recognition . . . c (1): to *remove* from existence . . . (2) to cause to disappear . . . *remove* . . . .") (emphasis added). The American Heritage Dictionary, upon which Romero-Martinez places great weight, defines "obliterate" as "[t]o do away with completely so as to leave no trace." American Heritage Dictionary of the English Language 1248 (3d ed. 1992). Although this definition does not directly use "remove," it is clear that "re-

moved completely," the language used in the jury instructions, meets this definition. Thus, all of these dictionaries support inclusion of "removed completely" within the definition of "obliterated."

## IV.

Romero-Martinez next makes three arguments asserting that this particular gun does not qualify for the enhancement.

## A.

Romero-Martinez first argues that the serial numbers on the slide and barrel do not qualify for the enhancement because they do not fall within the federal definition of a "firearm." Romero-Martinez contends that the slide and barrel are not part of the firearm because they may be detached from the gun and are not part of the "frame or receiver" of the weapon.

[4] The applicable definition of a "firearm" is set forth by 18 U.S.C. § 921(a)(3), which provides in part:

(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive;

(B) the frame or receiver of any such weapon;

(C) any firearm muffler or firearm silencer; or

(D) any destructive device.

Such term does not include an antique firearm.

The definition is set forth in the disjunctive and therefore any device meeting any of the definitions qualifies as a firearm (if it is not an antique). "Destructive device" is further defined in 18 U.S.C. § 921(a)(4) and does not apply to the gun Romero-

Martinez possessed. While it is true that the slide and barrel would not fall within definition (B) as they are not part of the "frame or receiver," it is clear that the slide and barrel fall within definition (A). Both parts are necessary to operate the weapon, and without them the gun cannot "expel a projectile by the action of an explosive." As such, it would be counterintuitive to exclude these components from the definition of firearm when they are necessary to complete the very action that makes a gun a "firearm" under part (A). Thus, at least when assembled as a functional weapon, the slide and barrel are part of a "firearm" under federal law.

**[5]** Under Romero-Martinez's interpretation, the *only* objects meeting the federal definition of "firearm" would be those incapable of firing a projectile by themselves. Congress did not intend such a limitation. We hold that, under 18 U.S.C. § 921(a)(3), both fully assembled guns, as well as major components of guns (i.e. the frame or receiver), qualify as "firearms." As such, altering or obliterating serial numbers on these components, at least when assembled as a functional weapon, qualifies for an enhancement under section 2K2.1(b)(4).

## B.

Romero-Martinez next argues that the serial numbers on the slide and barrel do not qualify for the enhancement because they are not required by federal law. This argument is foreclosed by *Carter*.

**[6]** *Carter* held that a serial number was "altered or obliterated" when "accurate information [is made] less accessible." 421 F.3d at 910. *Carter* thus focuses on whether the information was accurate, not whether it was required by federal law. There is no argument in this case that the serial numbers on the slide and barrel were not accurate information.

Furthermore, we held in *Carter* that the purpose of the enhancement is "to discourage the use of untraceable weapon-

ry." *Id.* at 914 (internal quotations and citation omitted). This requirement is satisfied if the firearm is made "more difficult, though not impossible, to trace . . . ." *Id.* The removal of the serial numbers on the slide and barrel clearly made the weapon more difficult to trace. Under *Carter*, this is sufficient to qualify for the enhancement.

**[7]** The issue of whether a serial number was required by federal law is therefore not relevant to either *Carter*'s standard or the enhancement's purpose. Removal of "non-required" serial numbers removes accurate information, makes a firearm less traceable, and is not indicative of any lesser culpability. Mandating that a serial number be required by federal law would allow many criminals to escape liability under the enhancement even where they both intend to render a gun less traceable and succeed in doing so. The enhancement's reach is not so limited.

Romero-Martinez tries to escape this logic by raising hypothetical *reductio ad absurdum* examples such as where a manufacturer might tape a paper serial number to the firearm. Although our holding on this issue will need to await a case involving similar facts, we can address the argument. We are unpersuaded that these examples would qualify as part of a "firearm" under federal law because these "components," unlike the slide and barrel, would not be necessary for the gun to "expel a projectile." Therefore, they likely would not qualify under 18 U.S.C. § 921(a)(3)(A). Of course, our decision does not foreclose our court from recognizing common-sense exceptions should such extreme circumstances present themselves in future appeals.

Romero-Martinez essentially asks us to impose a new requirement for the enhancement that is contrary to its purpose and to our decision in *Carter*. There is no reason to do so.

## C.

**[8]** Romero-Martinez also argues that the serial number on the frame of the gun could not qualify for the enhancement because it was not in compliance with federal law. He asserts that the serial number violated federal law because Glock "attaches a plate containing a number to the frame" rather than "engrav[ing] or cast[ing] a serial number onto the receiver or frame itself." The applicable statutory provision requires that a manufacturer identify weapons "by means of a serial number engraved or cast on the receiver or frame of the weapon . . . ." 18 U.S.C. § 923(i).

**[9]** However, as discussed above, the relevant question under *Carter* is whether an action has made "accurate information less accessible," not whether a serial number is required by or compliant with federal law. 421 F.3d at 916. A serial number is no less accurate if it is cast on the frame by means of a metal plate rather than directly engraved upon it. Additionally, the removal of the metal plate certainly makes the firearm less traceable. Romero-Martinez's flawed approach would allow defendants to escape liability merely because a manufacturer did not perfectly comply with federal law, even where the non-compliance has no effect on the accuracy of the information or the traceability of the firearm.

## V.

**[10]** Finally, Romero-Martinez attempts to raise a post-*Booker* "unreasonability" challenge to his sentence. This argument simply restates his previous arguments and uses them to contend that the resulting sentence was unreasonable. These underlying arguments were properly rejected for the reasons given above. To the extent that "reasonableness" requires independent review, it is plainly reasonable to impose the enhancement under section 2K2.1(b)(4) where the gun had not one, but three separately tampered-with serial numbers.

**AFFIRMED.**