Robin CURRAN, Plaintiff,

v.

**UNITED OF OMAHA LIFE INSURANCE COMPANY,**
Defendant.

**Case No. 12CV1935 JLS (BLM).**

United States District Court,
S.D. California.

Signed July 15, 2014.

Barbara Ann Casino, Stennett/Casino, San Diego, CA, for Plaintiff.

Martin E. Rosen, Barger .and Wolen LLP, Irvine, CA, James Hazlehurst, Barger & Wolen LLP, Los Angeles, CA, for Defendant.

## ORDER (1) GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND, (2) DENYING DEFENDANT'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

(ECF Nos. 32, 33)

JANIS L. SAMMARTINO, District Judge.

Presently before the Court are Plaintiff Robin Curran's ("Plaintiff") and Defendant United of Omaha. Life Insurance Company's ("United") cross motions for partial summary judgment on the standard of review. (Pl. Mot. for Partial Summ. J., ECF No. 33; Def. Mot. for Partial Summ. J., ECF No. 32.) The Court heard oral argument on April 28, 2014 and the motions were taken under submission thereafter. Having considered the parties' arguments and the law, the Court **GRANTS** Plaintiff's motion for partial summary judgment and **DENIES** United's cross motion for partial summary judgment,

## BACKGROUND

Plaintiff brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiff seeks long-term disability benefits under her employer-sponsored plan, known as the Pacific Monarch Resorts, Inc. Benefit Plan. (Pl. Mot. for Partial Summ. J. 2, ECF No. 33.) United issued the insurance policy funding the benefits ("the Policy") and served as the plan administrator. (*Id.*) The Policy went into effect on January 1, 2000 and remained in force through December 31, 2012. (*Id.*) An amendment to the Policy vesting United with discretionary authority to interpret the plan and determine

eligibility for benefits was implemented on January 1, 2008. (*Id.*)

Plaintiff was covered by the Policy when she became disabled on October 13, 2008. (*Id.* at 4.) Her symptoms included swelling of the knees, joint pain, cognitive difficulties, dizziness, and vertigo. (*Id.*) Plaintiff underwent numerous tests, one of which yielded positive results for Lyme Disease. (*Id.*) This diagnosis was made on the basis of test results, as well as clinical examination and medical history. (*Id.*)

United paid Plaintiff disability benefits under the Policy for 24 months, through January 17, 2011, on the basis of her self-reported symptoms. (*Id.*) United then denied Plaintiff's claim for continued disability benefits on May 9, 2011, finding that Plaintiff was able to "perform[ ] in the same physical capacity as prior to [her] last day of work." .(*Id.* at 5.) Plaintiff filed a timely appeal and the appeal was denied by United on March 9, 2012. (*Id.*) Plaintiff subsequently filed this action for benefits on August 7, 2012. (Compl., ECF No. 1.)

## LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." *Id.* "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255, 106 S.Ct. 2505.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The movant can carry his burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating to the Court that the nonmoving party "failed to make a sufficient .showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322–23, 106 S.Ct. 2548.

Once the moving party satisfies this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Furthermore, the nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. The nonmoving party must identify those facts of record that would contradict the facts identified by the movant.

## ANALYSIS

■ "A denial of benefits challenged under 29 U.S.C. 1132(a)(1)(B) 'is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe

the terms of the plan.'" *Polnicky v. Liberty Life Assurance Co. of Boston,* 999 F.Supp.2d 1144, 1147 (N.D.Cal.2013) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). "Where the plan or policy grants such discretion, the standard of review is abuse of discretion." *Cerone v. Reliance Standard Life Ins. Co.,* 9 F.Supp.3d 1145, 1148, 13CV184 MMA (DHB), 2014 WL 1304005, at *2 (S.D.Cal. Mar. 28, 2014) (citing *Saffon v. Wells Fargo & Co. Long Term Disability Plan,* 522 F.3d 863, 866 (9th Cir.2008)).

Here, Plaintiff maintains that the standard of review must be *de novo,* rather than abuse of discretion, because (1) the Policy does not unambiguously provide discretionary authority for United to determine eligibility for benefits; and, (2) even if the Policy vests United with such discretion, the grant of discretion is void pursuant to California Insurance Code § 10110.6. The Court addresses each argument in turn.

**1. Does the Policy Unambiguously Vest Discretion in the Plan Administrator?**

▉ For a policy to provide discretionary authority to a plan administrator, the policy must contain "language conferring authority on [the plan administrator] to determine eligibility, to construe the terms of the Plan, or to make final and binding determinations." *Sandy v. Reliance Standard Life Ins. Co.,* 222 F.3d 1202, 1205 (9th Cir.2000). The policy must make clear that the plan administrator or fiduciary has "authority, power, or discretion to determine eligibility or to construe the terms of the Plan," or else the standard of review will be *de novo. Id.* An administrator must affirmatively show that a policy confers discretionary authority in order to obtain judicial deference for a

decision. *Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1089 (9th Cir.1999).

Here, the Policy provides, in relevant part:

### AUTHORITY TO INTERPRET POLICY

By purchasing the Policy, the Policyholder grants Us the authority to construe and interpret the Policy. Benefits under the Policy will be paid only if the Insured Person is entitled to them. We have the authority to determine eligibility for benefits and interpret the terms and conditions of the Policy. In making any decision, We may rely on the accuracy and completeness of any information furnished by the Policyholder or an Insured Person. Determinations made by Us do not prohibit or prevent a claimant from seeking judicial review in federal court of Our determinations.

The authority to interpret made under this provision only establishes the scope of review that a federal court will apply when a claimant seeks judicial review of Our determination of eligibility for benefits, the payment of benefits, or interpretation of the terms and conditions applicable to the Policy.

We are an insurance company that provides insurance to this benefit plan and the federal court will determine the level of authority to interpret that it will accord Our determinations.

(Def. Mot. for Partial Summ. J., Ex. A, ECF No. 32–2.)

Plaintiff contends that the policy's language is ambiguous and does not confer discretion upon United. (Pl Mot. for Partial Summ. J. 6–7, ECF No. 33.) According to Plaintiff, the policy merely indicates "who makes the [final] decision [regarding benefits] but not how that decision is made or under what standard." (*Id.* at 6 (citing *Ingram v. Martin Marietta LTD Income*

*Plan for Salaried Employees,* 244 F.3d 1109, 1112 (9th Cir.2001)).) Plaintiff emphasizes that the policy's grant of authority does not "use the term discretion and/or deference," nor does it provide that the plan administrator's authority over benefit determinations is "full," "final," "conclusive," "unfettered," or "binding." (Pl. Resp. in Opp'n 2–4, ECF No. 34.)

Plaintiff's argument lacks merit. Plaintiff's reliance on *Abatie v. Alta Health and Life Insurance Co.,* among other cases, is misplaced, as that opinion actually confirms that a policy may confer discretionary authority upon a plan administrator "even though the word 'discretion' does not appear." 458 F.3d 955, 963 (9th Cir. 2006). Moreover, *Abatie* establishes that a policy's use of terms such as "full and final" and "exclusively" actually *"goes further"* than is required to vest discretion in the plan administrator. *Id.* at 965 (emphasis added). A policy may vest discretion simply by "bestow[ing] on the [plan] administrator the responsibility to interpret the terms of the plan [or] to determine eligibility for benefits." *Id.*

■ Here, the policy clearly empowers United to "determine eligibility for benefits and [to construe and] interpret the terms and conditions of the Policy," which is more than sufficient to confer discretion. Moreover, the Policy's grant of discretion is far less ambiguous than language deemed insufficient in prior cases. For example, in *Ingram,* the Ninth Circuit rejected a grant of discretion, emphasizing that the plan "merely identified the carrier as the entity that was to pay benefits and administer the plan," but "bestowed *no* power to interpret the plan." 244 F.3d at 1113 (emphasis added). Similarly, the Ninth Circuit determined in *Feibusch v. Integrated Device Technology, Inc. Employee Benefit Plan* that plan language providing only that proof of a disability

claim "must be satisfactory to [the plan administrator]" was insufficient to confer discretion. 463 F.3d 880, 883 (9th Cir. 2006). The Policy at issue here does not exhibit either of these flaws. Accordingly, the Court finds that the Policy unambiguously confers discretion upon United.

**2. Is the Grant of Discretion Rendered Void and Unenforceable by California Insurance Code Section 10110.6 ?**

■ California Insurance Code section 10110.6 provides, in relevant part:

(a) If a policy, contract, certificate, or agreement offered, issued, delivered, or renewed, whether or not in California, that provides or funds life insurance or disability insurance coverage for any California resident contains a provision that reserves discretionary authority to the insurer, or an agent of the insurer, to determine eligibility for benefits or coverage, to interpret the terms of the policy, contract, certificate, or agreement, or to provide standards of interpretation or review that are inconsistent with the laws of this state, that provision is void and unenforceable.

(b) For purposes of this section, "renewed" means continued in force on or after the policy's anniversary date.

(c) For purposes of this section, the term "discretionary authority" means a policy provision that has the effect of conferring discretion on an insurer or other claim administrator to determine entitlement to benefits or interpret policy language that, in turn, could lead to a deferential standard of review by any reviewing court.

. . .

(g) This section is self-executing. If a life insurance or disability insurance policy, contract, certificate, or agreement contains a provision rendered void and unenforceable by this section, the par-

ties to the policy, contract, certificate, or agreement and the courts shall treat that provision as void and unenforceable.

Section 10110.6 went into effect on January 1, 2012. Plaintiff maintains that § 10110.6 applies to the Policy and renders its discretionary clause void and unenforceable. (Pl. Mot for Partial Summ. J. 8–9, ECF No. 33.) According to Plaintiff, the Policy falls within the statute's scope of application because the Policy was "renewed" by operation of law, pursuant to § 10110.6(b), on the Policy's "anniversary date" of January 1, 2012, the same day that the law went into effect. (*Id.* at 9.) Plaintiff contends that the Policy "anniversary" is the annual recurrence of the Policy's effective date of January 1, 2000. (*Id.*)

In support of this interpretation, Plaintiff relies heavily on two recent decisions from the Northern District of California, *Polnicky v. Liberty Life Assurance Company of Boston*, 999 F.Supp.2d at 1146–49, and *Gonda v. The Permanente Medical Group, Inc.*, 10 F.Supp.3d 1091, 1093–95, Case No. 11–1363 SC, 2014 WL 186354 at *2–4 (N.D.Cal. Jan. 16, 2014), as well as the recent decision of the Southern District of California in *Cerone v. Reliance Standard Life Insurance*, 9 F.Supp.3d at 1149–50, 13CV184 MMA (DHB), 2014 WL 1304005, at *2-3. In all three cases, the policy in question was deemed to have "renewed" by operation of law upon the *annual recurrence* of a fixed date specified by the policy, which fell on or after § 10110.6's effective date of January 1, 2012. Thus, § 10110.6 applied to the policy and an otherwise valid discretionary clause was rendered void and unenforceable. *See Cerone*, 9 F.Supp.3d at 1149–50, 13CV184 MMA (DHB), 2014 WL 1304005, at *2-3; *Gonda*, 10 F.Supp.3d at 1095, 2014 WL 186354 at *4; *Polnicky*, 999 F.Supp.2d at 1147–49.

Plaintiff takes pains to distinguish *Orzechowski v. Boeing Company Non–Union Long–Term Disability Plan*, a recent decision from the Central District of California that appears to reach a contrary conclusion on similar facts. *See* Case No. SACV 12–01905–CJC (RNBx), 2014 WL 979191 at *8–9 (C.D.Cal. Mar. 12, 2014) ("[T]he Plan was last amended and restated on January 1, 2011 .... [and] [t]here is no evidence that the Plan has been renewed since then."). Plaintiff emphasizes that *Orzechowski* deals exclusively with a discretionary clause appearing in a *benefits plan*, whereas § 10110.6(b) provides only that an *insurance policy* renews by operation of law. *See id.* at *9 n. 3 ("Unlike insurance policies, *which automatically renew on an annual basis*, ... the benefits plan here doesn't automatically renew, either by its own terms or by operation of law." (emphasis added)).

United contends, however, that there is no support for Plaintiff's view "that the term 'anniversary date' means every 12 months after the Policy's effective date." (Def. Resp. in Opp'n 1, ECF No. 35.) United insists that the Policy's "anniversary date" is January 1, 2013, which marks the expiration of the Policy's two-year term, as well as the termination of the Policy's "rate guarantee." (*Id.* at 4–5.) According to United's interpretation of § 10110.6, a policy's "anniversary date" may recur at intervals of any length of time, including periods of more than one year. (*Id.* at 1.)

■ To determine whether § 10110.6 applies to the Policy at issue in this case, the Court must ultimately construe the term "anniversary date." The Court begins by noting that the term "anniversary date" is not defined in § 10110.6 or in any regulations promulgated thereunder. When a term in a statute is undefined, the term must be construed "in accord with its

'ordinary, contemporary, common meaning.'" *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir.2004) (quoting *A–Z Int'l v. Phillips*, 323 F.3d 1141, 1146 (9th Cir.2003)); *see also United States v. TRW Rifle 7.62X51mm Caliber, One Model 14 Serial 593006*, 447 F.3d 686, 689 (9th Cir.2006) ("When interpreting a statute, we must give words their 'ordinary or natural' meaning"); *Davila–Perez v. Lockheed Martin Corp.*, 202 F.3d 464, 468 (1st Cir. 2000) (citations omitted) ("When a word is not defined within the statute, it is given its ordinary meaning, *with all due consideration to the context* (emphasis added))"; *City of Santa Rosa v. Indus. Waste & Debris Box Rentals, Inc.*, 168 Cal.App.3d 1132, 214 Cal.Rptr. 737, 739 (1985) ("In determining [the] intent [of the legislature], the words of the statute must be construed *in context*, keeping in mind the nature and obvious purpose of the legislation in which they appear." (emphasis added)).

■ "To determine the plain meaning of a term undefined by a statute, resort to a dictionary is permissible." *Cleveland v. City of L.A.*, 420 F.3d 981, 989 (9th Cir. 2005) (internal quotation marks omitted); *see also Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.*, 550 U.S. 81, 94, 127 S.Ct. 1534, 167 L.Ed.2d 449 (2007) ("Because the statute uses technical language ... and seeks a technical purpose ..., we have examined dictionary definitions."); *TRW Rifle*, 447 F.3d at 686 ("[Because] Congress did not define what it meant by 'readily' or 'restore' in [26 U.S.C.] § 5845(b) ... [,] 'we follow the common practice of consulting dictionary definitions to clarify their ordinary meaning.'" (quoting *United States v. Carter*, 421 F.3d 909, 911 (9th Cir.2005))).

A number of general and technical dictionaries suggest that Plaintiff's position reflects an accurate and contextually appropriate definition of the term "anniversary date." For example, the entry for "anniversary" in *Barron's Dictionary of Insurance Terms* redirects the reader to the entry for "policy anniversary," which in turn is defined as the "12–month period from the date of issue of a policy." Harvey W. Rubin, *Barron's Dictionary of Insurance Terms* 385 (4th ed.2000). Similarly, the International Risk Management Institute's *Glossary of Insurance and Risk Management Terms* provides the following definition of "anniversary date":

> In policies with a term that exceeds 1 year, the anniversary of the policy inception date. For 1–year policies, this term can also be used to refer to the policy's renewal date.

*Anniversary date—Insurance Glossary,* IRMI Risk Management and Insurance Education and Information, (June 27, 2014), *http://www.irmi.eom/online/ insurance-glossary/terms/a/anniversary-date.aspx.* *Black's Law Dictionary* also confirms that this definition of "anniversary date" is broadly accepted in the insurance context:

> Anniversary date. (1990). *Insurance.* The annually recurring date of the initial issuance of a policy.

*Black's Law Dictionary* 108 (9th ed.2009).

Moreover, non-specialized English-language dictionaries indicate that the term "anniversary" is typically understood to refer to a date that recurs each year. *Oxford English Dictionary* ("OED") provides the following definition:

> A. *adj.*
>
> 1. 'Returning with the revolution of the year; annual; yearly' ...; returning or commemorated at the same date in succeeding years.
>
> ...

2. *loosely,* Annual, repeated each year. *Obs.*"

. . .

B. *n.* [for *anniversary day, anniversary service,* etc.]

1. The day in any year which agrees in date with a particular day in a former year; *hence,* the yearly return of any remarkable date, the day on which some event of ecclesiastical, national, or personal interest, is annually celebrated; formerly called *year-day, mind-day, mune-day.*

OED Online, http://www.oed.com/view/Entry/7909?rskey=G988Ju&result=1(last visited June 27, 2014). *Merriam–Webster's Collegiate Dictionary* mostly accords with the OED definition, providing that the term "anniversary" refers to "the *annual recurrence* of a date marking a notable event." *Merriam–Webster's Collegiate Dictionary* 50 (11th ed.2007). This dictionary also provides an alternative definition:

broadly: a date that follows [a notable] event by a specified period of time measured in units other than years, [e.g.,] the 6–month anniversary of the accident.

*Id.* Although this definition may appear to support United's interpretation of "anniversary" as a date that recurs after any length of time, the example provided in the text actually illustrates that deviation from annual recurrence must be "specified." *Id.* It follows that the unmodified term "anniversary" is typically presumed to refer to a date that recurs each year. *See id.*

The available case law also supports this interpretation of "anniversary date." For example, the policies in *Polnicky, Gonda,* and *Cerone* each set forth an annually recurring date as the policy "anniversary date." *See Cerone,* 9 F.Supp.3d at 1149–50, 13CV184 MMA (DHB), 2014 WL 1304005, at *2-3; *Gonda,* 10 F.Supp.3d at 1095, 2014 WL 186354 at *4; *Polnicky,* 999 F.Supp.2d at 1147–49. In *Orzechowski,* the court even went so far as to observe that, under § 10110.6(b), "insurance policies . . . automatically renew on an *annual* basis." 2014 WL 979191 at *9 n. 3 (emphasis added). Federal and California case law construing the term "anniversary date" in analogous contexts also signals that the term should be interpreted to refer to the annual recurrence of a policy's date of issue. *See, e.g., N.Y. Life Ins. Co. v. United States,* 724 F.3d 256, 258 (2d Cir.2013) ("[T]he Company paid certain of its whole life policyholders an *Annual Dividend* on the relevant policy's anniversary date" (emphasis added)); *Provident Life & Acc. Ins. Co. v. Hunter,* 165 F.2d 931, 932 (4th Cir.1948) ("We think it perfectly clear that it is [the] date which the policy bears on its face, and not the date of delivery, that the parties must be deemed to have had in mind when referring in the policy to its anniversary date."); *Boogaert v. Occidental Life Ins. Co.,* 150 Cal.App.3d 875, 198 Cal.Rptr. 357, 358 (1983) ("The new policy was issued July 12, 1969, and July 12 became the policy's anniversary date.")

Here, the Policy was issued on January 1, 2000, was last restated and amended on January 1, 2011, and remained in effect through December 31, 2012. Thus, the Policy was "renewed," pursuant to § 10110.6(b), upon its continuance in force beyond its "anniversary date" of January 1, 2012. Because § 10110.6 went into effect on that same day, the Policy falls within the statute's scope of application. Thus, the Policy in effect on March 9, 2012, the date on which Plaintiff's claim for benefits was denied, included a void and unenforceable discretionary clause.

Accordingly, the Court finds that United's decision to deny Plaintiff's benefits is subject to *de novo* review. The Court **GRANTS** Plaintiff's motion for partial

summary judgment on the standard of review and **DENIES** United's motion.

### CONCLUSION

For the reasons stated above, the Court concludes that the applicable standard of review is *de novo*. Accordingly, the Court **GRANTS** Plaintiff's motion for partial summary judgment and **DENIES** Defendant's cross motion for partial summary judgment.

**IT IS SO ORDERED.**