# United States Court of Appeals
## For the First Circuit

No. 02-1007

UNITED STATES OF AMERICA,

Appellee,

v.

ROBERT J. ADAMS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Boudin, Chief Judge,

Gibson,* Senior Circuit Judge,

and Torruella, Circuit Judge.

Thomas G. Briody, by appointment of the court, for appellant.
Donald C. Lockhart, Assistant United States Attorney, with whom Margaret E. Curran, United States Attorney, and Mary E. Rogers, Assistant United States Attorney, were on brief for the United States.

September 20, 2002

---

*Honorable John R. Gibson, of the Eighth Circuit, sitting by designation.

BOUDIN, Chief Judge. Based on information from an informant, the Providence, Rhode Island, police conducted surveillance of a residence in that city, secured a search warrant, and discovered in the basement two weapons: a .44 caliber revolver and a .45 caliber pistol with a badly scratched serial number. The next day, the defendant Robert Adams was interviewed by a federal agent and, waiving his Miranda rights, admitted to owning the guns and attempting to scratch out the serial number on the .45 with a screwdriver. Thereafter, a jury convicted Adams of being a felon in possession of a firearm, 18 U.S.C. § 922(g) (2000), and possessing a firearm with an altered serial number. Id. § 922(k) (2000).

Adams now appeals. The only claim that raises a legal issue of general importance concerns the definition of "altered" as used in section 922(k). That section makes it unlawful inter alia for anyone "knowingly" to possess any firearm, shipped in interstate commerce, that has had the manufacturer's "serial number removed, obliterated, or altered . . . ." Id. Adams's knowledge that the serial number had been tampered with is not in dispute and the commerce element was stipulated to.

The district court charged the jury that to alter was "to make some change in the appearance of the serial number." Following the charge, Adams objected that the instruction on alteration ought to have included "something about materiality." What objection was made before the charge is unclear but the need for a materiality requirement was argued by both sides on the

-2-

motion to acquit just before the charge. At that stage the district judge expressly rejected Adams's position that materiality was a separate requirement.

On this appeal, Adams argues that the evidence was not sufficient for conviction--an argument preserved by the motion to acquit made at trial--because (he claims) the serial number was still legible despite the screwdriver scratches. He also says that the district court's instruction was erroneous, arguing that a "material alteration . . . rendering the weapon difficult or impossible to trace" is necessary to justify a conviction. The issues of adequate evidence and instruction are different but both begin with the antecedent question of what conduct the statute means to encompass.

The crime of having a firearm with an "altered" serial number goes back, it appears, to the Federal Firearms Act of 1938. Pub. L. No. 785, § 2(i), 52 Stat. 1250, 1251 (1938). We have found little useful appellate precedent on the meaning of "altered"; and the government tells us that extensive research in the legislative history has produced nothing enlightening. If the statute made it a crime to attempt to alter a serial number, this case would be easy since Adams confessed to trying to obliterate the number; but there is no general federal "attempt" statute and no "attempt" provision in this one.

Yet anyone can see what Congress was getting at in the statute. Taking the words in context ("removed, obliterated, or altered"), the statute aims to punish one who possesses a firearm

whose principal means of tracing origin and transfers in ownership-
-its serial number--has been deleted or made appreciably more
difficult to make out.  Considering the evident purpose, it is hard
to see why anything more than a significant impairment should be
required; nothing in language or purpose suggests that the
alteration must make tracing impossible or extraordinarily
difficult.

Turning to the proper instruction, we think it would
ordinarily be enough to charge the jury in the words of the
statute, leaving it to the common sense of the jury to understand
the purpose and to adjust its application to carry out that
purpose.  "Alter," in this statute, is not some highly obscure or
special-purpose term that cries out for elaboration.  This, then,
is an instance in which the district judge may choose to elaborate
but is not ordinarily required to do so.  United States v.
Tormos-Vega, 959 F.2d 1103, 1112 (1st Cir.), cert. denied, 506 U.S.
866 (1992).

It is possible to imagine cases where arguably some
further elaboration or even a directed verdict might be called for
(e.g., a small scratch that did virtually nothing to make the
serial number harder to read).  But such cases are unlikely to be
filed by a prosecutor with any sense.  If and when such a case is
brought, one might expect the trial judge to refine the instruction
so far as necessary or, depending on circumstances, even to direct
a verdict for defendant.  Ours is not such a case.

Thus, we think--with Adams--that there is a kind of materiality requirement implicit in the statute but also one implicitly understood by jurors. This is especially so because, and here we agree with the government, any change that makes the serial number appreciably more difficult to discern should be enough, assuming always that the defendant made the change or is otherwise aware of it. See United States v. Abernathy, 83 F.3d 17, 19 & n.1 (1st Cir. 1996) (knowledge of the alteration required). To be sure, there are contexts in which a materiality concept may be highly technical and requires explanation--consider security fraud--but this is not one of them.

As for the evidence, that was clearly sufficient once it is understood that any alteration that works against legibility is enough; once again, we assume defendant's knowledge of the alteration which, in this case, can hardly be disputed. The pistol was presented to the jury. The case agent testified at trial that he could read the six digits of the serial number but with difficulty. At oral argument, Adams's counsel asked that this court examine the original pistol, and we now report the results.

Of the original six digits, the first four have been scratched or abraded so that they are significantly more difficult to read. In the case of the first, second and fourth, about half or more of the digit has been obscured by the scratching although the original can still be made out, while the third is damaged badly enough that it could be taken as a 3 or a 5. The case agent identified it as a 5, but it is so far from a slight scratch or

minor imperfection as to make concerns about the borderline academic in this case. (To complete the story, the fifth digit is completely readable but was thoroughly scratched at and only the sixth digit is unmarred.)

Of course, judgment as to the degree of impairment was for the jury. But a reasonable jury could easily conclude that this pistol had been altered so as to make it appreciably more difficult to read the serial number. Indeed, a reasonable jury could hardly reach any other conclusion. Only by reading the term "alter" to mean "obliterate" or "make impossible to interpret" could we find the evidence insufficient. The rule of lenity, invoked by Adams, is reserved for cases of genuine ambiguity, Muscarello v. United States, 524 U.S. 125, 138 (1998), and, all things considered, "altered" in context is not ambiguous.

We take the remaining five claims on appeal in order of the events at trial. The first claim is that jury selection, conducted by consent before a magistrate judge, see Peretz v. United States, 501 U.S. 923, 939 (1991), was flawed because of the failure to afford defense counsel a final look at the potential alternative jurors before defense counsel agreed that he was satisfied with the initial 12 jurors.

As defense counsel had already exhausted his peremptory challenges, it is not clear what a further look would have accomplished. In any event, defense counsel who had already spent plenty of time with the full venire made no effort to bring the objection to the attention of the district judge, as Peretz

permits.  Id.  Counsel cannot wait until the trial is over before raising a known claim that, if it had any merit, could easily have been corrected at the time.

Next, on September 12, 2001, after the jury had been selected, defense counsel asked the district judge for a further voir dire.  The purpose was to determine whether any of the jurors (now selected but not yet sworn) had friends or relatives who had suffered in the September 11 World Trade Center attack and, if so, whether such jurors could remain impartial.  The district judge denied the request on the ground that the attack had "no relation whatsoever" to the events in which Adams was charged.  Adams says that this was error.

Whether to reopen voir dire and what questions to permit is largely within the discretion of the district court.  See United States v. Brown, 938 F.2d 1482, 1485 (1st Cir.), cert. denied, 502 U.S. 992 (1991).  Here, Adams was not accused of a violent act, let alone one connected with terrorism.  Further, Adams had confessed in writing to the key facts, so the jury's predisposition as to police credibility--a matter tested in the original voir dire--was of minimal importance.  United States v. Victoria-Peguero, 920 F.2d 77, 84 (1st Cir. 1990), cert. denied, 500 U.S. 932 (1991).  The district court did not abuse its discretion in refusing the request for more questioning.

Adams then attacks the district court refusal to hold a Franks hearing designed to challenge the search warrant.[1] The warrant had been issued by a state judge based on an affidavit from a Providence police detective. The affidavit recounted a report from an informant who had described in detail, based on personal observation, recent drug dealing by Adams and others in the residence later searched and the storage of drugs and guns in the basement. The affidavit said that the informant had given useful information in the past and "had never been found to be false or misleading."

After receiving this tip, the detective and other officers conducted surveillance of the residence, confirming details provided by the informant. The police noticed not only Adams and others fitting the informant's description of the drug dealers but also brief visits by numerous persons "consistent with drug trafficking." A criminal history check showed that Adams had previously been convicted of drug dealing. The ensuing search, of course, turned up the weapons in the basement.

In a pre-trial motion, Adams asked the court to suppress the evidence, claiming inter alia a lack of probable cause for the search. Needless to say, this claim was rejected and the probable

_____

[1]A Franks hearing, prescribed in Franks v. Delaware, 438 U.S. 154 (1978), is primarily a vehicle for challenging a warrant by impeaching the affiant. Mere inaccuracies, even negligent ones, are not enough. The defendant must offer a basis for suspecting both (1) that there were misstatements or material omissions that were deliberate or reckless and (2) that if corrected the affidavit would not have supported a finding of probable cause. Id. at 171-72.

-8-

cause issue is not pursued on appeal. Instead, after the guilty verdict, the Franks hearing was sought on the ground that the affidavit had omitted pertinent information undermining the informant's credibility. This motion was based both on information obtained by defense counsel prior to trial and information obtained during the course of trial.

The former consisted of a bevy of facts (some from the prosecutor and some unearthed by defense counsel) concerning prior crimes by the informant and his later employment by authorities as an informant who might profit from providing useful information. The facts had at most a remote bearing on credibility--none of the crimes involved false statements and (expenses aside) the rewards were for accurate information. But in any event Adams's failure to pursue the matter before trial, given that he had the information then, forfeits his claim. Fed. R. Crim. Proc. 12(f); United States v. Batista, 239 F.3d 16, 19 (1st Cir.), cert. denied, 122 S.Ct. 117 (2001).

During trial, the government produced one final piece of information about the informant, namely, that he had agreed in his deal with the government to commit no more crimes but had in fact thereafter sold cocaine on three occasions. The government said that the informant had so confessed the night before this disclosure and, as the informant had been listed as a possible witness, this new fact was proffered to satisfy Brady/Giglio obligations. Brady v. Maryland, 373 U.S. 83 (1963); Giglio v. United States, 405 U.S. 150 (1972). Defense counsel then moved for

a mistrial and a stay; both were denied but the court said that a post-trial <u>Franks</u> motion could be filed.

The appeal on this point is only from the denial of the new trial motion seeking a <u>Franks</u> hearing. The denial was patently correct: there is no indication that the detective knew of the informant's new drug dealing when he made the affidavit. But what is even plainer is that the informant's own drug dealing and broken promise, even if it had been fully disclosed, would have left in the warrant ample facts, corroborated by police observations of the house, to provide probable cause. <u>See, e.g.</u>, <u>United States</u> v. <u>Paradis</u>, 802 F.2d 553, 557-58 (1st Cir. 1986).

Finally, Adams says that the trial was tainted by four different statements of the prosecutor in closing argument. This is an uphill argument since the evidence against Adams was quite powerful and included his confession. Worse still, three of the four statements were not objected to and so are reviewable only for plain error, which includes a stiff requirement for showing prejudice. <u>United States</u> v. <u>Taylor</u>, 284 F.3d 95, 102 (1st Cir), <u>cert. denied</u>, 122 S. Ct. 2612 (2002). And, as we will see, the statements were in some measure a matter of the prosecutor fighting fire with fire.

The first statement challenged reads as follows:

> If ATF had wanted to arrest a bunch of people and charge a lot of people instead of just Robert Adams, they could have arrested James Pemberton. They could have arrested Jason Antrade. They're not here looking for numbers. They could have arrested Manson Carpenter.

-10-

"They're not here looking for numbers" together with the examples could be viewed as a form of vouching for the competence and integrity of the police and probably should not have been said. But it was provoked by the defense claim that the police ignored other suspects. See United States v. Kirvan, 997 F.2d 963, 964-65 (1st Cir. 1993). More important, it was not objected to and the idea that this statement--singly or with anything else at issue-- likely changed the outcome is quite implausible.

The second statement reads: "That's good police work that he [the detective] continued to look into this case . . . ." This was a direct response to defense counsel's claim that the further investigation after Adams's arrest demonstrated that the police had doubts about Adams's guilt. Given the context, we doubt the rejoinder was improper at all; in substance it offered an innocent inference to counter a sinister one. Certainly it was not plainly error nor did it alter the outcome.

The third statement by the prosecutor was this: "We're not trying to prosecute anyone that is innocent." This should not have been said because it arguably invited the jury to rely upon the prosecutor's implied expression of personal belief in Adams's guilt. But it was a tame version of this kind of mistake. Compare United States v. Rosales, 19 F.3d 763, 767 (1st Cir. 1994). And despite the lack of objection, the district court told the jury to ignore the remark. Once again, there is no likelihood that the remark altered the outcome.

Finally, in his closing, defense counsel pointed to the government's failure to call the informant, saying: "He's not a witness here, and we don't know why." The government answered that the defense counsel knew of the informant before trial and "could have called [him] if he wanted him." At that point defense counsel objected, the court sustained the objection, and the judge ultimately instructed the jury to disregard the instruction "completely," explaining the defendant had no burden to call anyone.

Frankly, we think that the district court, being understandably cautious on the verge of a verdict, was kind to the defendant. Unprovoked, the prosecutor's statement could amount to impermissible burden shifting. But here defense counsel invited the jury to infer that the informant had evidence favorable to the defense, and the prosecutor--in our view permissibly--replied that any such evidence could have been secured by the defendant. Most circuits, and (in an analogous case) the Supreme Court, share our view that this is a fair response.[2]

In our tradition, defense counsel are allowed a good measure of latitude in summing up to the jury and the defense here seems to have made good use of this opportunity to sow doubt. But

---

[2]See, e.g., United States v. Aldaco, 201 F.3d 979, 988 (7th Cir. 2000); United States v. Vaccaro, 115 F.3d 1211, 1218 (5th Cir. 1997), cert. denied, 522 U.S. 1047 (1998); United States v. Williams, 990 F.2d 507, 509-10 (9th Cir), cert. denied, 510 U.S. 926 (1993); cf. United States v. Robinson, 485 U.S. 25, 27-28, 31 (1988) (upholding prosecutor's comment that defendant could have explained his story to jury when defense counsel had asserted that prosecution would not let the defendant testify).

this also means that, in the tight confines of the closing argument, prosecutors must make snap judgments as to how to respond, applying standards (like "improper vouching") that in many applications are far from crystal clear. Nothing in the prosecutor's few arguable lapses here warrants censure, let alone a reversal.

Affirmed.