# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 16, 2009

No. 08-40917

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

JOE DANIEL PEREZ

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, SMITH, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

Defendant Joe Daniel Perez ("Perez") appeals from the 120 month sentence imposed by the district court following his guilty plea to a single count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Under the Guidelines, the district court applied a four-level enhancement to Perez's base offense level because it found the firearm's serial number had been altered or obliterated, and applied another four-level enhancement because it found that Perez possessed the firearm in connection with the commission of another felony. Perez raised objections to the application of both of those enhancements, which the district court overruled. For the reasons set forth below, we affirm Perez's sentence.

## I. BACKGROUND

Perez pleaded guilty to possessing a firearm as a convicted felon. According to the Presentence Report ("PSR"), the night of Perez's arrest, police officers heard gunshots when they were clearing the streets in downtown Corpus Christi as the bars were closing. A witness, who would later identify Perez from a lineup, informed the officers that a Hispanic male wearing a white collared shirt and black pants had fired in the witness's direction from a maroon Chevrolet Impala. The officers observed Perez, who fit the witness's description, walk away from a maroon Chevrolet Impala and another maroon car. A resident of the area also told the police that she observed Perez brandish a firearm, shoot it into the air, then shoot it into a group of people. Police later recovered a .38 special caliber revolver from a maroon Oldsmobile. The revolver's "[s]erial number appeared to be altered and partially obliterated, as if somebody had attempted to scratch the numbers off." The serial number resembled R072366.

Using the 2007 edition of the U.S. Sentencing Guidelines ("Guidelines" or "U.S.S.G."), the probation officer assigned a base offense level of 24. PSR ¶ 12. He added four levels because the firearm's serial number was altered or obliterated pursuant to U.S.S.G. § 2K2.1(b)(4). He added four more levels because the firearm was possessed in connection with committing another felony, in this case deadly conduct by discharge of a firearm, pursuant to U.S.S.G. § 2K2.1(b)(6). The probation officer substracted three levels for Perez's acceptance of liability, which brought the total offense level to 29. *Id*. at ¶¶ 19-20. Perez's offense level of 29 combined with his criminal history of category IV resulted in a sentence under the guidelines of 120 months, the maximum under 18 U.S.C. § 924(a)(2).

At the sentencing hearing, Perez objected to both the enhancement under U.S.S.G. § 2K2.1(b)(4) and U.S.S.G. § 2K2.1(b)(6). The district court overruled the objection to the enhancement for an altered or obliterated serial number

after viewing photographs of the firearm and concluding that "somebody . . . tried to file off the serial number." With regard to the second enhancement, Perez admitted that he shot the firearm in the air but contended that he did not discharge it in the direction of anyone. He further asserted that discharging a firearm was not sufficiently distinct from possessing a firearm to permit the enhancement. The government argued that Perez discharged his weapon in downtown Corpus Christi as people were pouring out of the closing bars. Firing the weapon into the air also posed the risk of striking an occupied building or vehicle. The district court overruled all of Perez's objections, adopted the PSR, and sentenced him to 120 months imprisonment. Perez filed a timely appeal.

## II. STANDARD OF REVIEW

Perez challenges only the district court's application of the Guidelines. The failure to properly calculate the applicable Guidelines range is procedural error. *Gall v. United States*, 128 S.Ct. 586, 597 (2007); *United States v. Rodriguez*, 523 F.3d 519, 524-25 (5th Cir. 2008). The district court's interpretation and application of the Guidelines are reviewed *de novo*. *United States v. Rodriguez-Mesa*, 443 F.3d 397, 401 (5th Cir. 2006). The district court's factual findings made in applying the Guidelines are reviewed for clear error and will be upheld "so long as it is 'plausible in light of the record as a whole.'" *United States v. Ekanem*, 555 F.3d 172, 175 (5th Cir. 2009) (quoting *United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir.2006)). "However, a finding will be deemed clearly erroneous if, based on the record as a whole, [the court is] 'left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *United States v. Castillo*, 430 F.3d 230, 238 (5th Cir.2005)).

## III. DISCUSSION

### A. Altered or Obliterated Serial Number

Perez asserts that the district court should not have imposed the enhancement for an altered or obliterated serial number because he was not the

one who "attempted to alter or obliterate the serial number" and because the serial number on the revolver was "actually readable." We disagree.

First, § 2K2.1(b)(4) provides for a two-level enhancement if the firearm was stolen and a four-level enhancement if the firearm's serial number was altered or obliterated. U.S.S.G. § 2K2.1(b)(4). The four-level enhancement applies "regardless of whether the defendant knew or had reason to believe that the firearm was stolen or had an altered or obliterated serial number." *Id.* app. n.8(B). This court has continually enforced the clear and unambiguous language of § 2K2.1(b)(4) and its strict liability standard. *See United States v. Singleton*, 946 F.2d 23, 24 (5th Cir. 1991); *United States v. Dancy*, 947 F.2d 1232, 1233-34 (5th Cir. 1991); *United States v. Fry*, 51 F.3d 543, 546 (5th Cir.1995); *United States v. Hodges*, 190 F.3d 537 (5th Cir. 1999); *United States v. Leon-Gonzalez*, 220 F.3d 386 (5th Cir. 2000); *United States v. Williams*, 365 F.3d 399, 407-08 (5th Cir. 2004). For example, in *United States v. Singleton*, we examined § 2K1.2(b)(4)'s stolen firearm prong and concluded that its language and meaning were plain and unambiguous and that knowledge was not required. *See Singleton*, 946 F.2d at 25. Likewise, the plain language of U.S.S.G. § 2K2.1(b)(4) does not require that the defendant be the one who obliterated or altered the serial number or that he know it had been obliterated or altered.

Second, U.S.S.G. § 2K2.1(b)(4) states that the enhancement applies where the firearm "had an altered or obliterated serial number." *Id.* After viewing two photographs of the firearm during the sentencing hearing, the district court noted that the serial number looked like someone "tried to file [it] off." The PSR states that the firearm's "serial number appeared to be altered and partially obliterated, as if somebody had attempted to scratch the numbers off." We must determine, therefore, whether damage to a serial number that did not render it unreadable qualifies as an alteration for purposes of § 2K2.1(b)(4). Our court has not yet interpreted the meaning of "altered or obliterated."

In *United States v. Carter*, the Ninth Circuit held that "for the purposes of Guideline §2K2.1(b)(4), a firearm's serial number is 'altered or obliterated' when it is materially changed in a way that makes accurate information less accessible." 421 F.3d 909, 910 (9th Cir. 2005). Noting that it was the first appellate court to interpret the meaning of "altered or obliterated," the Ninth Circuit began its statutory construction with the plain language of § 2K2.1(b)(4). *Id*. at 911. Tracing back the origins of § 2K2.1(b)(4), it concluded that the meaning of "altered or obliterated" had not previously been defined by the Guidelines; thus it would follow "common practice of consulting dictionary definitions to clarify their ordinary meanings." *Id*. (quoting *MCI Telecomm. Corp. v. AT & T Co.*, 512 U.S. 218, 225 (1994)). Surveying first the ordinary meaning of "obliterated," the court found that several dictionary definitions "reasonably could embrace a requirement that a serial number be obliterated not just beyond the unaided eye, but also beyond scientific recognition." *Id*. at 912. But it further noted that "[t]his was not . . . the only possible interpretation, as alternative definitions define 'obliterate' more flexibly." *Id*. Concluding, therefore, that the interpretation of the ordinary meaning of "obliterated" was inconclusive, it moved on to construe "altered." As an initial matter, the court noted that "[i]rrespective of how 'obliterated' is construed, 'altered' surely requires a lesser degree of defacement." *Id*. Finding that the ordinary meaning of "alter" was "[t]o change or make different; modify," it rejected the notion that "a firearm's serial number must be more than merely changed or modified" but must have a changed meaning as well. *Id*. at 913 (internal quotation marks and citations omitted).

Next, the Ninth Circuit looked to § 2K2.1(b)(4)'s structural context and legislative history "for clues that another meaning of the phrase 'altered or obliterated'–other than its ordinary meaning–was intended." *Id*. Tracing back § 2K2.1(b)(4) from the Sentencing Guidelines' promulgation by the U.S.

Sentencing Commission in 1987 to its likely derivation from 18 U.S.C. § 922(k), to that provision's origins in the Omnibus Crime Control and Safe Streets Act of 1968, the Gun Control Act of the same year and the Federal Firearms Act of 1938, the court concluded that the legislative history of § 2K2.1(b)(4) suggested that "altered or obliterated" likely is derived from what is today found in 18 U.S.C. § 922(k) but that "no progenitur of § 922(k) at any point define[d] these words." *Carter*, 421 F.3d at 913-14. Finally, the court surveyed the few decisions that had previously construed the phrase "altered or obliterated." The court first turned to its own decision in *United States v. Seesing*, where it held that a homemade silencer that never had a serial number could not be deemed altered or obliterated in the sense of § 2K2.1(b)(4). 234 F.3d 456, 460 (9th Cir. 2001). Summarizing its reasoning in *Seesing*, the *Carter* court observed:

> [§ 2K2.1(b)(4)] intends to 'discourag[e] the use of untraceable weaponry.' This purpose is advanced not only by punishing those who possess untraceable firearms, but also by punishing those who possess firearms that are more difficult, though not impossible, to trace because their serial numbers have been defaced. As this case aptly demonstrates, it may be difficult to determine, from a visual inspection alone, whether a serial number appears defaced is, in fact, untraceable when scientific means are employed. On the street, where these guns often trade and where microscopy is rarely available, one cannot readily distinguish between a serial number that merely *looks* untraceable and one that actually *is*. At that level it is appearances that count: A gun possessor is likely to be able to determine only whether or not his firearm *appears* more difficult, or impossible, to trace.

*Carter*, 421 F.3d at 914-15 (quoting *Seesing*, 234 F.3d at 460). Therefore, the court concluded that the plain language of § 2K2.1(b)(4) was controlling. *Id*. at 915.

Based on its interpretation of the provision's plain language, legislative history as well as earlier decisions interpreting "altered or obliterated,"the *Carter* court held in conclusion that "for purposes of Guideline § 2K2.1(b)(4), a

firearm's serial number is 'altered or obliterated' when it is materially changed in a way that makes accurate information less accessible." *Carter*, 421 F.3d at 916.[1] We agree with the Ninth Circuit's reasoning and holding in *Carter*.

Turning to the instant case, Perez does not dispute that the serial number on his firearm looked like someone "tried to file [it] off," as the district court found, or that it "appeared to be altered and partially obliterated, as if somebody had attempted to scratch the numbers off," as the PSR stated. Accordingly, the district court did not err in finding that the serial number of the firearm Perez possessed had been materially changed in a way that made its accurate information less accessible, and that it had been "altered or obliterated" for purposes of § 2K2.1(b)(4).

## B. Possession of a Firearm in Connection with Another Felony

Perez next argues that the district court erred by enhancing his sentence for possessing a firearm in connection with another felony offense because he was never charged with the connected offense and because the connected offense is only a misdemeanor under Texas state law. Perez further asserts that he should be resentenced because the district court based its enhancement on the

---

[1] The Ninth Circuit also found its conclusion buttressed by the First Circuit's decision in *United States v. Adams*, 305 F.3d 30 (1st Cir. 2002), a case which interpreted the meaning of "altered" in connection with 18 U.S.C. § 922(k). In *Adams*, the defendant was convicted of possession of a firearm as a convicted felon and of possession of a firearm with an "altered" serial number after he admitted attempting to scratch it out. *See id.* at 33. The First Circuit held that the trial court had properly instructed the jury when it defined "to alter" as "to make some change in the appearance of the serial number" because the plain language of the statute required "any change that makes the serial number appreciably more difficult to discern." *Id.* at 30, 34.

Other circuits that have addressed the meaning of "altered, removed or obliterated" in 18 U.S.C. § 922(k) have reached substantially identical conclusions as that of the First Circuit. *See United States v. Mixon*, No. 96-4203, 1998 WL 739897, at *3 (6th Cir. Oct. 8, 1998) (unpublished) (affirming conviction for possession of firearm with an altered or obliterated serial number in violation of § 922(k) where only a portion of the serial number was obliterated); *United States v. Horey*, No. 93-5273, 1994 WL 507450, at *2 (10th Cir. Sept. 16, 1994) (unpublished) (same, where serial number was partially obscured).

PSR's contention that he fired the firearm at a person or group of persons, while he admitted only to firing the weapon in the air. We disagree.

First, § 2K2.1(b)(6) provides for a four-level enhancement to the defendant's base offense level "[i]f the defendant used or possessed any firearm . . . in connection with another felony offense." U.S.S.G. § 2K1.2(b)(6). Under Texas law, a person who "knowingly discharges a firearm at or in the direction of (1) one or more individuals; or (2) a habitation, building, or vehicle and is reckless as to whether the habitation, building or vehicle is occupied" is guilty of a "felony of the third degree." TEX. PENAL CODE ANN. § 22.05(b) & (e) (Vernon 2004). The district court, as the basis for applying the enhancement, relied on Perez's own admission that he discharged his weapon into the air in downtown Corpus Christi at a time when people were pouring out of the closing bars. Perez admitted that he had discharged his weapon into the air in downtown Corpus Christi at a time when the streets were filled with people leaving the closing bars. At the sentencing hearing, defense counsel argued that Perez would tell the district court that "although he did discharge the firearm, it was not at a group of people," but that he did not dispute the presence of other individuals close by and within range of Perez at the time he discharged the firearm. The Government noted in turn that even if the district court accepted Perez's version of events, he discharged his firearm in "the downtown area at a time when there is – just as bars are closing. There was (sic) a number of people on the streets. And from where he is in the parking lot firing the gun in literally any direction would result in the bullet striking an occupied building or vehicle." Perez never disputed having discharged the firearm under these circumstances. The district court also credited the probation officer's finding, contained in the PSR, that a witness told the Corpus Christi police that Perez, whom the witness later identified out of a lineup, " fire[d] shots in his direction from the side of a maroon Chevrolet." In light of this evidence, the district court's finding that Perez

8

violated TEX. PENAL CODE ANN. § 22.05(b) & (e) (Vernon 2004) is "plausible in light of the record as a whole." *Ekanem*, 555 F.3d at 175 (citation omitted).

Second, the Guidelines prescribe a four-level enhancement if the defendant possessed the firearm in connection with another felony, "regardless of whether a criminal charge was brought, or a conviction obtained." § 2K2.1(b)(6), cmt. n.14(C). Thus, whether or not Perez was ever charged with or convicted of committing the Texas state felony is irrelevant for purposes of the four-point enhancement under U.S.S.G. § 2K2.1(b)(6). It is also well-established that the district court's consideration of this uncharged criminal conduct in calculating the advisory Guidelines range does not run afoul of the Sixth Amendment. *See United States v. Johnson*, 445 F.3d 793, 797-98 (5th Cir. 2006).

For the first time on appeal, Perez also argues that the four-level enhancement under § 2K2.1(b)(6) does not apply here because the offense of firing the weapon was not sufficiently distinct from possessing the weapon to permit the enhancement. Because Perez failed to preserve this objection below, we review this challenge for plain error only. *See United States v. Olano*, 507 U.S. 725, 731-37 (1993); *United States v. Campos-Maldonado*, 531 F.3d 337, 339 (5th Cir. 2008); *United States v. Krout*, 66 F.3d 1420, 1434 (5th Cir. 1995). Perez cites to decisions from the Third, Sixth and Seventh Circuits for the proposition that classifying an offense that arose from the same conduct as "another felony offense" under U.S.S.G. § 2.K2.1(b)(6) renders the word "another" superfluous. *See United States v. Fenton*, 309 F.3d 825, 826-27 (3d Cir. 2002); *United States v. Szakacs*, 212 F.3d 344, 349-50 (7th Cir. 2000); *United States v. Sanders*, 162 F.3d 396, 399-400 (6th Cir. 1998). However, we have previously rejected the Third, Sixth and Seventh Circuits' line of reasoning, as those decisions all specifically recognize. *See Fenton*, 309 F.3d at 827; *Szakacs*, 212 F.3d at 349-50; *Sanders*, 162 F.3d at 401. In *United States v. Armstead*, 114 F.3d 504 (5th Cir. 1997), a case of first impression at the time, the defendants broke into a pawn

shop that was licensed to sell firearms and stole nineteen guns. The defendants pleaded guilty to stealing firearms from a licensed dealer, but were also charged by the State of Texas with burglary. *See id.* 511-13. Noting that it was a "close case," *id.* at 514, this court held that the sentencing judge's four-level enhancement for possessing a firearm in connection with another felony pursuant to U.S.S.G. § 2K2.1(b)(5), now U.S.S.G. § 2K2.1(b)(6), based on the Texas state burglary charge was proper:

> While no evidence suggests that the Armsteads possessed firearms before they entered the pawn shop, once inside, they possessed firearms and could have used them in furtherance of "another felony," the state law crime of burglary. As a result, the four-level enhancement appropriately reflects the concern for public safety which the Guidelines sought to achieve. Amendment 374 of the Guidelines also supports this holding by noting that "[t]he firearms statutes often are used as a device to enable the federal court to exercise jurisdiction over offenses that otherwise could be prosecuted only under state law." U.S.S.G. App. C, Amend. 374. In this case, the enhancement sanctions the state law crime of burglary as "another felony offense." Nothing in the Guidelines suggests that contemporaneous crimes cannot be considered when enhancing a sentence. In fact, the relevant conduct provisions of [U.S.S.G.] § 1B1.3 appear to readily permit such an enhancement. Therefore, in order to appropriately sanction the state crime of burglary in connection with the Armsteads' 18 U.S.C. § 922(u) offense, the [U.S.S.G.] § 2K2.1(b)(5) enhancement was proper.

*Id.* at 513.

This court has since applied *Armstead's* rationale to facts similar to the ones in this case. For example, reviewing for plain error, we upheld a four-level enhancement of the appellant's sentence for possession of a firearm as a convicted felon pursuant to what is now U.S.S.G. § 2K2.1(b)(6) based on the appellant's earlier involvement in a shooting with the same firearm. *See United States v. Appiah*, 284 Fed. App'x. 126, 127-28 (5th Cir. 2008) (unpublished). *See also United States v. Deleon*, 228 Fed. App'x. 460, 461-62 (5th Cir. 2007)

(unpublished) (affirming the district court's four-level enhancement under then U.S.S.G. § 2K2.1(b)(5) based on the factual finding that he also committed manslaughter under Texas law with the same weapon); *United States v. Minnitt*, 217 Fed. App'x. 351, 353-54 (5th Cir. 2007) (unpublished) (affirming the district court's four-level enhancement under then U.S.S.G. § 2K2.1(b)(5) based on the factual finding that he also intended to use the same weapon in an aggravated assault under Texas law); *Le v. United States*, 512 F.3d 128, 134-35 (5th Cir. 2008) (affirming the district court's four-level enhancement under then U.S.S.G. § 2K2.1(b)(5) based on the factual finding that he also committed attempted aggravated assault under Texas state law with the same weapon); *United States v. Thompson*, 325 Fed. App'x. 365, 366 (5th Cir. 2009) (unpublished) (affirming the district court's four-level enhancement under U.S.S.G. § 2K2.1(b)(6) based on the factual finding that he attempted to shoot law enforcement officers with the same firearm). Therefore, under this court's precedents, Perez's possession of the weapon as a convicted felon is sufficiently distinct from his discharging the weapon in violation of TEX. PENAL CODE § 22.05(b) & (e) (Vernon 2004) to warrant the enhancement under U.S.S.G. § 2K2.1(b)(6). Accordingly, the district court did not commit plain error in applying that enhancement in calculating Perez's Guidelines sentence.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the sentence imposed by the district court.