**UNITED STATES of America,**
**Plaintiff,**

v.

**Ernesto MORALES–CASTRO,**
**Defendant.**

**Criminal No. 12–229 (FAB).**

United States District Court,
D. Puerto Rico.

May 30, 2013.

---

Amanda C. Soto–Ortega, United States Attorney's Office, San Juan, PR, for Plaintiff.

Javier A. Cuyar–Olivo, San Juan, PR, for Defendant.

## OPINION AND ORDER

BESOSA, District Judge.

Before the Court is a Report and Recommendation ("R & R") issued by Magistrate Judge Camille Velez–Rive. (Docket No. 77.) The magistrate judge recommends that defendant Ernesto Morales–Castro's ("Morales") motion to suppress, (Docket No. 26), be denied. (Docket No. 77 at p. 24.) After an independent review of the record and defendant Morales' objections to the R & R, (Docket Nos. 78 & 80), the Court **ADOPTS** the R & R and **DENIES** the defendant's motion to suppress.

## DISCUSSION

### I. Background

The Court declines to rehash all of the facts. Background information or facts

will be recounted as needed in the Court's subsequent legal analysis of particular issues. *See United States v. Stierhoff,* 549 F.3d 19, 21 (1st Cir.2008).

On March 21, 2012, the Puerto Rico Police Department ("PRPD") executed a search warrant on defendant Morales' home, which is located at Jardines de Cupey Public Housing Project, Building # 7, Apartment # 77, located in San Juan, Puerto Rico. (Docket No. 1–1 at p. 1.) A municipal judge from the Puerto Rico Court of First Instance, San Juan Division, issued a search warrant on March 13, 2012; the warrant was supported by a sworn statement from Agent Carlos Concepcion–Ramos ("Agent Concepcion"). (Docket No. 77 at p. 1.) During the search of defendant Morales' home, the PRPD found a firearm and oxycodone pills. (Docket No. 1–1 at p. 1.) After this search, in the presence of federal authorities from Homeland Security Investigations ("HSI"), defendant Morales signed a written waiver of his right to remain silent and also gave authorities consent to search his vehicle. *Id.* at pp. 1–2. After obtaining consent, an agent discovered a hidden compartment in the vehicle containing automatic weapons and ammunition. *Id.* at p. 2.

Subsequently, defendant Morales was charged with possession with intent to distribute a detectable amount of oxycodone in violation of Title 21, *United States Code,* Section 841(a)(1); possession of a firearm in furtherance of drug trafficking in violation of Title 18, *United States Code,* Section 924(c)(1)(A); and possession of a machinegun in violation of Title 18, *United States Code,* Section 922(*o* ) and 924(a)(2). (Docket No. 8.)

On July 2, 2012, defendant Morales filed a motion to suppress the evidence found during the search of his home pursuant to the search warrant issued by the Commonwealth court. (Docket No. 26.) He also requested a hearing pursuant to *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).[1] Defendant Morales argues that the warrant was based on Agent Concepcion's sworn statement, which contained "blatant omissions ... and implausible allegations." *Id.* at p. 5. Defendant Morales also argues that because the search warrant was based on an unreliable sworn statement, the search of his home and the subsequent search of his car—even though the latter was based on his consent—should be considered fruits of the poisonous tree, and, therefore, should be excluded. (Docket No. 78 at pp. 21–23.) He also argues that his consent was not given voluntarily and knowingly. *Id.* at pp. 22–23.

The magistrate judge held a *Franks* hearing in several sessions. (*See* Docket Nos. 59–64 & 68–70.) During the hearing, Agent Concepcion discussed how he conducted the surveillance that he used in his sworn statement for the affidavit. The hearing focused on whether Agent Concepcion had his cell phone with him when he allegedly conducted this surveillance and whether records from his cell phone company matched up with his whereabouts.

In her R & R, the magistrate judge denied defendant's motion to suppress. The magistrate judge provided a summary of the testimonies given at the hearing, (*see* Docket No. 77 at pp. 4–16), and found that, based on the testimonies, defendant Morales failed to meet his burden to show that Agent Concepcion's statements in the affidavit in support of the search warrant were false. Specifically, she focused on

---

1. Pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), a *Franks* hearing "is primarily a vehicle for challenging a warrant by impeaching the affiant." *United States v. Adams,* 305 F.3d 30, 36 n. 1 (1st Cir.2002).

how defendant Morales failed to present a preponderance of the evidence to show that Agent Concepcion could not have been where he had attested to be in the sworn affidavit in support of the warrant application. *Id.* at p. 20. Furthermore, the magistrate judge addressed defendant's arguments regarding the subsequent search of his car and found that the government had established that defendant Morales provided a knowing, written, voluntary, and valid consent to search it. *Id.* at p. 24. Therefore, the magistrate judge recommended that defendant Morales' motion to suppress be denied. *Id.* at p. 24.

On November 21, 2012, defendant Morales filed his objections to the magistrate judge's R & R. (*See* Docket No. 78.) On January 18, 2013, he filed a supplement to his objections. (*See* Docket No. 80.) In short, defendant Morales argues that (1) the magistrate judge's failure to find that Agent Concepcion used his cell phone during periods when he was allegedly on surveillance was clear error; (2) the magistrate judge's finding that Agent Concepcion was sufficiently credible to overcome the evidence demonstrating the falsity of the sworn statement was clear error; (3) special circumstances are present that require further testimony from Agent Concepcion; and (4) the magistrate judge's finding that the search of defendant Mor-

ales' vehicle was pursuant to a voluntary and valid consent was clear error.[2] (*See* Docket No. 78.) The Court addresses each of defendant Morales' objections in turn and finds all of defendant Morales' arguments unavailing.

## II. Legal Standard under 28 U.S.C. § 636(b)(1)

A district court may refer a pending motion to suppress to a magistrate judge for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Loc. Rule 72(b). Any party adversely affected by the report and recommendation may file written objections within fourteen days of being served with the magistrate judge's report. *See* 28 U.S.C. § 636(b)(1).

■■■ A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." *Sylva v. Culebra Dive Shop*, 389 F.Supp.2d 189, 191–92 (D.P.R.2005) (citing *United States v. Raddatz*, 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)). Failure to comply with this rule precludes further review. *See Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir.1992). Furthermore, the objecting party must put forth more than "[c]onclusory objections

---

**2.** Defendant Morales also argues that the magistrate judge improperly failed to consider a document that he attached to his reply to the government's response to his motion to suppress, (Docket No. 46–D). (Docket No. 78 at p. 7.) The document, however, is entirely in Spanish. (*See* Docket No. 46–D.) Local Rule 5(g) requires all documents not in the English language that are presented or filed to be accompanied by a certified translation into English. D.P.R. Civ. R. 5(g) ("All documents not in the English language which are presented or filed, whether as evidence or otherwise, must be accompanied by a certified translation into English prepared by an inter-

preter certified by the Administrative Office of the United States Courts ...") Defendant Morales has had ample opportunity to provide the translation; in light of his failure to do so, the Court will not consider the document in its analysis. *See Puerto Ricans for Puerto Rico Party v. Dalmau*, 544 F.3d 58, 67 (1st Cir.2008). Furthermore, even if defendant Morales provided an English translation of the document, he fails to put on any evidence about it and its relevance during the *Franks* hearing and, therefore, the Court will not consider it when reviewing the defendant's objections to the R & R.

that do not direct the reviewing court to the issues in controversy." *Velez–Padro v. Thermo King De Puerto Rico, Inc.,* 465 F.3d 31, 32 (1st Cir.2006). Even though timely objections to a report and recommendation entitle the objecting party to *de novo* review of the findings, "the district court should be spared the chore of traversing ground already plowed by the Magistrate." *Gonzalez–Ramos v. Empresas Berrios, Inc.,* 360 F.Supp.2d 373, 376 (D.P.R.2005) (citing *Sackall v. Heckler,* 104 F.R.D. 401 (D.R.I.1984)). The party's objections must be grounded "in fact . . . and warranted by existing law or a good faith argument for the extension" rather than a reiteration of arguments already considered and rejected by the magistrate judge. *Id.*

■ In conducting its review, a court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(a), (b)(1); *Templeman v. Chris Craft Corp.,* 770 F.2d 245, 247 (1st Cir.1985); *Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc.,* 286 F.Supp.2d 144, 146 (D.P.R.2003). Furthermore, a court may accept those parts of the report and recommendation to which the parties do not object. *See Hernandez–Mejias v. General Elec.,* 428 F.Supp.2d 4, 6 (D.P.R. 2005) (citing *Lacedra v. Donald W. Wyatt Detention Facility,* 334 F.Supp.2d 114, 125–126 (D.R.I.2004)).

### III. Legal Standard for a *Franks* Hearing

■ The Fourth Amendment of the United States Constitution states that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court established that a criminal defendant has a right to a hearing to attack, pursuant to the Fourth Amendment, the statements contained in an affidavit submitted in support of a request for a search warrant. A *Franks* hearing, therefore, "is primarily a vehicle for challenging a warrant by impeaching the affiant." *United States v. Adams,* 305 F.3d 30, 36 n. 1 (1st Cir.2002). A defendant is entitled to a hearing to challenge the trustfulness of statements given in support of a search warrant "if he makes a substantial preliminary showing that (1) a statement in the affidavit was knowingly and intentionally false, or made with reckless disregard for the truth; and (2) the falsehood was necessary to the finding of probable cause." *United States v. Strother,* 318 F.3d 64, 69 (1st Cir.2003) (citing *Franks,* 438 U.S. at 171–72, 98 S.Ct. 2674). A defendant is only entitled to a hearing if that preliminary showing is made. *See United States v. Castillo,* 287 F.3d 21 (1st Cir.2002). At the hearing, a defendant must first successfully establish by a preponderance of the evidence the allegations of perjury or reckless disregard. *Franks,* 438 U.S. at 156, 98 S.Ct. 2674. Next, a defendant must also show that with those false statements set to one side, the remaining contents are insufficient to establish probable cause, and that, therefore, the warrant must be voided and the fruits of the search excluded. *Id.*

In this case, the magistrate judge determined that defendant Morales was entitled to a *Franks* hearing. (Docket No. 77 at p. 4.) Therefore, the Court focuses on the second prong of the *Franks* analysis, which requires a defendant to make a sub-

stantive showing to establish the falseness of the statements given by the affiant.

## IV. The Defendant's Objections to the Magistrate Judge's R & R

### a. Findings regarding Agent Concepcion's Alleged Cell Phone Use

■ Defendant Morales first argues that the magistrate judge committed clear error because of her failure to find that Agent Concepcion used his cell phone during periods when he was allegedly on surveillance. (Docket No. 78 at pp. 3–6.) The magistrate judge found that defendant Morales failed to establish that Agent Concepcion had the cell phone during surveillance. (Docket No. 77 at p. 19.) To support her conclusion, the magistrate judge focused on Agent Concepcion's testimony that he often does not bring his phone with him when he goes on surveillance. *Id.* Furthermore, the alleged cell phone used by Agent Concepcion is not registered to him; rather, it is registered to his father. *Id.* Defendant Morales objects by arguing that Agent Concepcion has indicated that he has used the phone in question, and that there were phone calls and text messages made to his co-workers from that line. (Docket No. 78 at pp. 3–4.) As the magistrate judge found, however, even if Agent Concepcion had carried the cell phone on the dates in question, defendant Morales fails to present any evidence showing that Agent Concepcion was not conducting the surveillance to which he attested in his sworn affidavit in support for the arrest warrant. (Docket No. 77 at p. 20.)

First, defendant Morales' own expert witness, Ricardo Matos–Acosta ("Matos"), a manager of engineering and radio frequency at Claro, testified that the coverage of a cell phone tower depends on a variety of factors. (Docket No. 63 at pp. 12, 13 & 17.) Matos agreed that some cell phone towers can reach as far as ten, fifteen, and even twenty miles. *Id.* at p. 18. Thus, it is difficult to determine where a cell phone is located based on the towers and call data. He also stated that the distance between Puerta de Tierra in San Juan, where Agent Concepcion's office is located, and the Cupey II tower, near the housing project that Agent Concepcion allegedly visited, is about seven miles. *Id.* at p. 18–19. He cannot tell the reach of the cell phone towers however, based on the information given to him. *Id.* at pp. 20–21. Each tower, he said, encompasses three different "sectors," or set geographical locations. (Docket No. 63 at pp. 12–13.) He stated that some of the calls placed on that particular cell phone may be registered to a number of different towers. (Docket No. 62 at p. 47.) Therefore, the fact that a specific cell phone tower picked up a signal might not be a reliable determination of where the cell phone holder was located at the time of the call. Based on Matos' testimony, it seems that the cell phone data provides little or no information about the location of Agent Concepción's father's cell phone when the calls were placed.

Next, even if the cell phone data provides any information about the location of the cell phone, it is unclear whether Agent Concepcion had the cell phone on him during the dates in question. Agent Concepcion indicated that he rarely carries his cell phone during surveillance. As the magistrate judge indicated in her R & R, the cell phone was not one that was provided to law enforcement agents by Agent Concepcion's employer; rather, the phone was registered to Agent Concepcion's father. (*See* Docket No. 77 at pp. 19–20; *see also* Exh. J.) Defendant Morales did show, however, that several phone calls and/or text messages were made to at least one phone number that belongs to Agent Con-

cepcion's co-worker, Sergeant Javier–Vazquez–Calderon. (*See* Docket No. 63 at pp. 38–43; *See* Exh. XX.) But even assuming that Agent Concepcion had the cell phone on him when he was performing surveillance and that the towers are indicative of his location, Agent Concepcion's testimony about his whereabouts and the cell phone data presented at the hearing actually corroborate the statements in his affidavit.

In the sworn affidavit which supported his warrant application, Agent Concepcion stated that on February 22, 2012, he interviewed an informant around 10:30 a.m. and then proceeded to go to the Jardines de Cupey Residential Project at about 1:30 p.m. (Docket No. 32–1 at pp. 1–2.) At the hearing, he also stated that he arrived at the housing project at about 1:30 p.m. after speaking to the informant. (Docket No. 59 at p. 33.) The phone calls logged for the cell phone number in question, which defendant Morales argues that Agent Concepcion had with him, indicates that on the morning of February 22, 2012, starting around 11:26:16 a.m., the phone was in the Cupey area, with incoming and outgoing phone calls being made in that region until the early afternoon. (Docket No. 60 at pp. 104–114.) At approximately 4:14:35 p.m., the phone received an incoming call from the Puerta de Tierra cell site located in the San Juan region, (Docket No. 60 at p. 114), which is consistent with Agent Concepcion's statement that after performing surveillance in the housing project, he returned to his place of work in Puerta de Tierra. *Id.* at pp. 140–144. Thus, even if Agent Concepcion had the cell phone and used the phone during those dates and times, the records support Agent Concepcion's recitation of events in his affidavit about his surveillance of the Jardines de Cupey housing project. Therefore, the Court disagrees with defendant Morales' argument that the magistrate judge made a clear error with regard to her findings about Agent Concepcion's cell phone usage during periods when he was allegedly on surveillance.

**b. Findings Regarding Agent Concepcion's Credibility and the Falsity of His Sworn Statement**

■ Defendant Morales made several objections regarding the magistrate judge's findings about Agent Concepcion's credibility and the alleged falsity of his sworn statement. For example, defendant Morales argued that the apartment number for apartment 77 in the Jardines de Cupey housing project, which was the apartment that Agent Concepcion allegedly surveilled, was not visible based on the photographs that were submitted into evidence. (*See* Docket No. 78 at p. 8; Exh. EE, FF, GG, HH & JJ.) As the magistrate judge stated during the hearing, however, defendant Morales' argument fails because it is unclear whether the photographs of the housing project contain the view that Agent Concepcion had at the moment of surveillance. (Docket No. 59 at p. 50.) Furthermore, Agent Concepcion stated during the hearing that by looking at the specific photographs that were submitted during the hearing, one cannot see the number above the apartment number. *Id.* at p. 50. Agent Concepcion stated, however, that when one is driving by the housing complex or driving in reverse to park in the spot that he parked, one can see the apartment door and the number 77. *Id.* at pp. 50–51.

Additionally, Agent Concepcion indicated in his sworn affidavit in support for the warrant that his confidential informant identified which apartment to look for when standing in front of that particular apartment complex. (Docket No. 32–1 at p. 2.) Specifically, he stated that the informant told him "that in the apartment

at the second floor, if you are standing in front of building # 7 on the right side, it has a white grill work on the entrance door and does not have a visible number ..." *Id.* In the same sworn affidavit, Agent Concepcion stated that the particular apartment mentioned by the informant "does not have a visible number" but that "apartment # 77 is located on the third floor left side and has a visible number." *Id.* Defendant Morales fails to rebut these statements nor does he provide evidence by other witnesses—opinion or expert—about how the apartment 77's number is not visible from those angles. *Id.* In fact, the photographs submitted by defendant Morales reveal that the apartment doors are exposed to the outside such that a person who is standing or sitting in a car in front of the apartment building may have a clear view of any person walking into and out of the apartments. (*See* Exh. JJ, KK, & LL.) Therefore, other than the conclusory statement by defendant Morales in his objections to the magistrate judge's findings, there is no support for defendant Morales' contentions about the visibility of the apartment and apartment number from the street. Similarly, defendant Morales argues that Agent Concepcion's statement that he did not take photographs during the surveillance is incredible but provides no evidence to support it other than the conclusory statement that he did not provide photographs "because he actually saw no one." (Docket No. 78 at p. 8.)

Defendant Morales also relies on a report and recommendation issued by then Magistrate Judge Justo Arenas, *United States v. David Oppenheimer–Torres,* No. 04–00028, (D.P.R. filed December 31, 2003)[3], and argues that "the underlying facts and the consequent analysis and findings in *Oppenheimer–Torres* are instruc-

tive in the instant matter." (Docket No. 80 at p. 2.) The Court disagrees. In *Oppenheimer–Torres,* the magistrate judge focused on how there was "no clear and straight line of sight" to support what the officer allegedly saw. (Criminal Case No. 04–00028, Docket No. 35 at p. 8.) As support for this finding, the magistrate judge in *Oppenheimer–Torres* focused on how a paralegal from the Federal Public Defender's Office provided a sworn statement about the physical impossibility of having a full view of both apartment doors, contrary to the officer's contention, due to the architecture of the housing project. *Id.* at p. 5. Unlike *Oppenheimer–Torres,* defendant Morales provides no such evidence. As stated earlier, the photographs submitted by defendant Morales show that a person standing may see any persons entering and leaving the apartment in question, and from specific views, one may be able to see the apartment doors in question. Therefore, defendant Morales' reliance on *Oppenheimer–Torres* is misplaced.

Defendant Morales also contends that Agent Concepcion held himself out to be a federal agent on an United States Immigration and Customs and Enforcement ("ICE") form even though he was not a federal agent. (Docket No. 78 at p. 7.) Such behavior, defendant Morales argues, further supports "[t]he impression that Agent Concepcion is careless with the truth ..." The Court is unconvinced. First, during the *Franks* hearing, Special Agent Luis Fombellida ("SA Fombellida"), who works for the San Juan Office of HSI, testified about the circumstances regarding the particular forms in question. (Docket No. 63 at p. 61; Exh. 6 & 7.) He stated that when he met with defendant Morales, officers from the PRPD; the CID, which is the Criminal Intelligence

---

**3.** Hereinafter, "Criminal Case No. 04–028."

Division of the PRPD; and two Task Force agents, at least one of which is a ICE Task Force Agent,[4] were present. (Docket No. 63 at pp. 64–65 & 95.) SA Fombellida stated that he explained several times to defendant Morales that HSI is a federal agency and that he read to defendant Morales the Declaration of Rights Form, (Exh. 6), which is his agency's form for Miranda warnings. (*See e.g.,* Docket No. 63 at pp. 65–66; Docket No. 64 at p. 34.) He also stated that he verbally explained defendant Morales' rights to him and told him repeatedly that he did not have to talk to SA Fombellida, and that defendant Morales understood this as he answered SA Fombellida's questions. *Id.* SA Fombellida also stated during the hearing that when he discussed the form with defendant Morales, there was a individual by the first name of Neftali who was present and indicated that he was defendant Morales' legal counsel. (Docket No. 63 at p. 72 & 74.) On the Consent to Search form, which is another ICE form, Agent Concepcion wrote his name and badge identification number, clearly indicating that he is a local PRPD agent. (Exh. 7.) SA Fombellida, who is an ICE agent, and one other witness also signed that form. *Id.* Thus, Agent Concepcion clearly stated his name and badge identification number to show that he is a local PRPD agent and did not, as defendant Morales argues, hold himself out to be an ICE agent. Finally, even if Agent Concepcion held himself out to be a federal agent, such an act has no impact on his statements in his sworn affidavit in support for the warrant. Again, defendant Morales has not presented any evidence or on-point authority in support of his argument in this regard aside from his own conclusory statements. Therefore, defendant Morales' arguments regarding Agent Concepcion's credibility and the falsity of his sworn statement fail.

### c. Defendant's Objections Regarding Special Circumstances That Require Further Testimony from Agent Concepcion

Defendant Morales argues that special circumstances require further testimony from Agent Concepcion. (*See* Docket No. 78 at p. 19.) He makes this argument in a cursory manner and relies on inapposite authority to support his argument. *Id.* First, defendant relies on *United States v. Hernandez–Rodriguez,* 443 F.3d 138, 148 (1st Cir.2006), to argue that the Court should allow Agent Concepcion to be questioned again. (Docket No. 78 at pp. 19–21.) The *Hernandez–Rodriguez* court, however, focused on whether a district court judge may reject a magistrate's findings without first hearing the testimony that was the basis for the determination, 443 F.3d at 148, which is inapplicable to the situation in this case. Furthermore, defendant argues that there are "special circumstances" that warrant hearing from Agent Concepcion again. These circumstances are simply repeated arguments that defendant Morales makes in the rest of his objections. The Court has already addressed those arguments above and find that defendant Morales' arguments fail; thus, his argument that there are "special circumstances" that warrant further testimony from Agent Concepcion must also fail.

Because defendant Morales has not established by a preponderance of the evidence that Agent Concepcion perjured himself or made false statements in reckless disregard such that the remaining contents of Agent Concepcion's affidavit

---

**4.** SA Fombellida stated that the "ICE Task Force agents" are local PRPD agents who are assigned to the ICE Division. (Docket No. 63 at p. 95.)

are insufficient to establish probable cause, *Franks*, 438 U.S. at 156, 98 S.Ct. 2674, defendant Morales' motion to suppress is **DENIED.**

### d. Defendant's Objections Regarding The Search of His Vehicle

Defendant Morales also argues that the magistrate judge made a clear error by finding that the search of his vehicle was pursuant to a voluntary and valid consent. (Docket No. 78 at pp. 21–25.) First, he argues that even if the search was pursuant to a voluntary and valid consent, anything discovered from the search was "fruit of the poisonous tree" because the officers obtained consent from defendant Morales while he was detained after an illegal search. *Id.* at pp. 21–22. Next, he argues that the consent obtained by the officers was not voluntary and knowing. The Court finds defendant Morales' arguments unavailing.

■■■■ The Fourth Amendment prohibits "unreasonable searches and seizures." *U.S. Const. amend. IV.* The exclusionary rule, which excludes evidence seized in violation of the Fourth Amendment, enforces this prohibition on unreasonable searches and seizures. *United States v. Camacho*, 661 F.3d 718, 729 (1st Cir.2011) (internal citation omitted). "Evidence obtained during a search may be tainted by the illegality of an earlier Fourth Amendment violation, so as to render such evidence inadmissible as 'fruit of the poisonous tree.'" *Camacho*, 661 F.3d at 729 (internal citations omitted).

With regards to defendant Morales' first argument, as the magistrate judge found, defendant Morales has not established by a preponderance of evidence that the search performed pursuant to the warrant was illegal under the Fourth Amendment. The Court agrees with the magistrate judge. The Court discussed defendant Morales' objections to the R & R earlier,

and found no illegal search and no reason to suppress any evidence pursuant to the first search. Therefore, because there is no illegal search to "taint" any evidence discovered from the second search of defendant's vehicle, defendant Morales' "fruit of the poisonous tree" argument fails.

■■■■ Next, defendant Morales argues that the consent obtained by SA Fombellida was involuntary because of "his clear expression that he did not wish to give a statement." (Docket No. 78 at p. 22.) Defendant Morales provides no evidence, however, to support this contention. Again, as discussed earlier, SA Fombellida stated during the *Franks* hearing that he explained clearly, in the presence of defendant Morales' legal counsel, that defendant Morales did not have to speak with him or give his consent to the agents to search the vehicle. This testimony is supported by the consent forms signed by defendant Morales. (*See* Exhs. 6 & 7.) Not only did defendant Morales sign two different consent forms to indicate that he knowingly and voluntarily gave the agents the right to search his vehicle, he also initialed next to each of his rights detailed in the "Declaration of Rights" section on one of the forms to indicate that each right was explained to him. (*See* Exh. 7; Docket No. 63 at p. 67.) Finally, SA Fombellida, along with one other agent, signed both of the forms as a witness to the entire process, and he testified as such during the *Franks* hearing. Thus, based on SA Fombellida's testimony, it seems that defendant Morales understood that he was giving consent to federal agents to search his car, and that there was no pretense about what was happening during that meeting. Morales presents no evidence to counter any of this evidence that the government established during the hearing. Therefore, because defendant Morales fails to show that the search of his vehicle followed an illegal

search or that he did not provide the government with a knowing, voluntary, and valid consent to search, defendant Morales' motion to suppress the evidence found during this search is **DENIED.**

### CONCLUSION

Having closely considered both the R & R and defendant Morales' objections, the Court **ADOPTS** the magistrate judge's findings and recommendations. Accordingly, defendant Morales' motion to suppress is **DENIED.**

**IT IS SO ORDERED.**